## THE UNION BANK OF LOUISIANA v. JONES.

The board of directors of the branch of the Union Bank at Covington, being clothed by the stat. of 2 April, 1832, incorporating the bank, and by the rules and regulations adopted by the board of directors of the mother bank, with such powers only as the charter expressly granted, or such as were necessary and incidental to the accomplishment of the objects contemplated by the charter, in establishing an office of discount and deposit at that place, were limited agents, unauthorized to make a donation of the property of the stock-holders; consequently, where the maker of a note owned by the bank made a *cessio bonorum*, the board of directors of the branch could not authorize the cashier to vote for his discharge, thereby abandoning all claim against the insolvent in the event of his coming to better fortune, and discharging the endorser. The bank having acquired a right to a dividend whether a discharge was voted or not, the vote was purely gratutious—a mere donation, and not binding on the bank.

A third person can derive no benefit from an usurpation of power by an agent on whose acts he relies, where such usurpation was known to him.

Decisions in *Union Bank* v. *Jones*, as to the certificates of notice of protest, *ante* p. 220, affirmed.

APPEAL from the District Court of St. Tammany, *Penn*, J.

*Halsey*, for the appellants. The directors of the branch were themselves without authority to grant a discharge. They were agents, having only a power of administration, and could not remit a debt, for remission is an act of ownership. *Union Bank of Louisiana* v. *Bagley*, 10 Rob. 43. Pothier, Oblig. 619. Mandat, 164. C. C. art. 630. The charter, s. 34 (Acts 1832, p. 68,) provides "that there shall annually be appointed by the board of directors of the Union Bank, to administer (*pour administrer*) the affairs of said offices of discount and

UNION BANK<br>*v.*<br>JONES'

deposit, five or seven directors." The expression "to administer" is employed in our law in contradistinction "to use as owner." We derive the term from the french law, where it is used in the same acceptation. There are many familiar instances of this employment of the word. I will note only that in art. 2965 of the Code, defining the effect of the mandate in general terms, and that of the express mandate. It seems reasonable to infer from the use of a term of this received meaning, to. define the object of the appointment of the directors of the branches, that the legislature has given them the power of general agents—a power of administration, the transaction of the ordinary business of the offices, the care and safe investment of the capital. That this construction gives the intention of the legislature is plain, from other features in the charter. Section 2 provides "that the deliberations of the board of directors of said corporation (the mother bank) shall have the same force and effect as the deliberations of the stock-holders." Sec. 34 makes the directors of the branches subject "to all such regulations and rules as may be adopted by the board of the mother bank for the government of said officers." The board of the mother bank is composed neccessarily of stock-holders, (s. 10); the directors of the branches are not required to be stock-holders; besides, the board of the mother bank appoints the directors of the branches. The first is a body of owners having a right in themselves, and an interest at stake. The second are creatures of the first, deriving all authority from their appointment, and have no interest whatever. The first are principles, the second mere agents. The proximity of the branches to the mother bank, the facility of communicating with it, create a presumption that it was contemplated by the legislature that for all transactions out of the usual course of business, the directors of the branches should cousult the board of the mother bank. "Lorsque le mandant n'est pas assez éloigné pour que son procureur ne puisse facilement le consulter sur ses affaires *extraordinaires* qui peuvent survenir, la présumption est que le mandant par la procuration générale qu'il lui a donnée n'a entendu le charger que de ses affaires *courantes et ordinaires*, qui ne souffrent pas de difficulté." This rnle expresses a reservation most reasonably implied in the trust to every agent.

"If the powers of such attorneys or officers have not been expressly determined, they are regulated in the same manner as those of other agents." C. C. 430. If the charter be not sufficiently explicit, we must ascertain the powers of the directors of the branches from the rules of the law of mandate. The powers of the directors being given "in general terms, confer only a power of administration." "The power must be express and special in general, where things to be done are not merely acts of administration, or such as facilitate such acts." C. C. 2965, 2966. Pothier, Mandat, 148. "Quelqu' étendue que soit une procuration générale, elle ne donne pas au procureur le pouvoir de disposer par donation d'aucune chose des biens dont on lui a donné la gestion. C'est une conséquence de ce principe, que le procureur omnium bonorum n'a pas le pouvoir de faire une rémise gratuite de quelque droit qui appartiendrait au mandant, une telle rémise lorsqu'elle est gratuite, étant une véritable donation." Pothier, Mandat, 164. Olig. 619. The only instance of remission within the power of the general agent is that given from necessity, of a part of the debt in order to preserve the rest of it. "La rémise d'une partie de la créance pour se conserver le surplus, et dans la crainte de perdre tout. Elle ne se fait pas tant animo donandi, que dans l'intention de s'assurer par ce moyen le paiement du surplus de la dette et de ne pas tout perdre." It may well be doubted whether even the directors of the mother bank can give a discharge, without the consideration of an advantage. But it is certain that the directors of a branch cannot. This discharge was not necessary to enable the bank to participate in the proceeds of the insolvent's estate. The discharge was gratuitous. C. C. 2173.

No presumption of a ratification of the discharge, which the defendant may derive from the recognition by the board of the vote of the cashier in other respects, can avail the defendant. The ratification cannot be implied—it must be express. C. C. 2990.

*Jones, pro se.* The holder of the note sued upon, not having preserved his rights unimpaired against the maker, the endorser is discharged. See Civil Code, arts. 3030, 3032. *Lobdell* v. *Niphler*, 4 La. 294. *Hereford* v. *Chase*, 1 Rob. 212. *Callahan* v. *Tanner*, 3 Rob. 299. *McGuire* v. *Wooldridge*, 6 Rob. 47. *Gustine* v. *Union Bank*, 10 Rob. 412. *Freeman* v. *Profilet*, 11 Rob. 33. *Bank of the United States* v. *Hatch*, 6 Peters' U. S. Rep. 250. Chitty on Bills, 299, 305.

UNION BANK
*v.*
JONES.

The cashier of the branch, *Read*, had a right to do every thing within the scope of his authority, without any special authorization, according to the general usage, practice and course of business of such institutions; and such acts are binding on the bank. The cashier is the executive officer of the bank, through whom and by whom the whole monied transactions of the bank, in paying or receiving debts, and discharging or transferring securities, are to be conducted. He is entrusted with all the funds of the bank in cash, notes and bills, and other securities, to be used, from time to time, for the ordinary and extraordinary exigencies of the bank. And any restrictions upon his authority, with regard to the disposal of the notes and bills belonging to the bank, must be established by competent proofs, and will not be presumed to exist. See Story on Agency, secs. 16, 52, 53, 114. *Minor* v. *Merchants' Bank of Alexandria*, 1 Peters' U. S. Rep. 70. C. C. art. 429, 430.

Even if *Read* had not been cashier, he had possession of this note endorsed in blank, which gave him the legal title to it as owner, and with it he appeared before the notary, and his authority to controul the proceedings to that amount could not be questioned. The delivery of a note endorsed in blank to an agent, invests him with all the authority respecting the disposal of the note that could be conferred by power of attorney. Story on Agency, s. 104. Chitty on Bills, p. 147. Story on Bills, s. 207. *Conrey* v. *Elbert*, 2 An. 18. *Succession of Nicolas*, 2 An. 97.

If there should remain any doubt as to the authority of *Read*, that doubt is removed by the conduct of plaintiffs, which amounts to a ratification. His acts having been notified to the corporation, no objection was made. It has recognized the selection of syndic, has controlled his administration and received the dividends. Having acquiesced in the acts done in its name for nearly six years, received the benefits of so much of the acts of the agent as was favorable, still retaining that agent in its employ, it is now too late to disapprove of the part deemed unfavorable. C. C. art. 2252. Story on Agency, s. 90, 93, 244, 250, 260. 1 Livermore on Agency, p. 44, 53. *The Episcopal Charitable Society* v. *The Episcopal Church in Dedham*, 1 Pick. 372. *Reid* v. *Powell*, 11 Rob. 98. *Elam* v. *Carruth*, 2 An. 275.

The cases reported in 10 Rob. pp. 43, 47 of *The Union Bank* v. *Bagley*, and *Bagley* v. *Tate*, no doubt induced the plaintiff to commence the present suit; but the nature of the claims enforced in those suits were entirely different from the present. The claims that were opposed by *Bagley* belonged to the parent bank, they were not under the administration of *Read* in his capacity of cashier of the branch, and it was not shown on the trial that he had any authority to represent that bank. Had that authority been shown, it would not have varied the result; because those claims were founded on special mortgages, executed by *Terrell* on property which he afterwards sold to *Bagley*, subject to the mortgages, and in violation of clauses in them. *Read*, when he appeared before the notary, discharged *Terrell*, but reserved the rights of the bank on the mortgaged property; and the bank in those suits only sought to enforce those rights. It did not disavow the acts of *Read*, as their agent, but sought only to enforce the stipulations he had made in their favor.

The judgment of the court* (*King*, J. absent,) was pronounced by

SLIDELL, J. The defendant, who is sued as the endorser of a note discounted and held by the branch of the Union Bank at Covington, contends that he has been released from all liability, by reason of the voluntary discharge of the maker. *Terrell*, the maker of the note, had made a *cessio bonorum*. At the meeting of his creditors the cashier of the bank appeared, and voted a discharge of the insolvent. It does not appear that any authority to do so had been given by the mother board, nor does any resolution appear on the minutes of the branch board; but a witness, who was at that time a director of the branch, states that, to the best of his knowledge and recollection, the board of directors of the Covington branch requested the cashier to attend the meeting, accept the surrender, and grant a discharge. We do not deem it necessary to say whether this evidence

---

* EUSTIS, C. J., though a stockholder of the Union Bank, sat on this case, at the request of the defendant.

was admissible, and if admissible, whether it proved that a resolution of the <span style="float:right">UNION BANK<br>v,<br>JONES.</span> branch board was passed authorizing the cashier to give the vote. Assuming, then, that there was such a resolution, we shall limit ourselves to the enquiry, whether it, and the act of the cashier under it, were binding on the corporation.

It is obvious that the discharge was a mere donation. *Terrell* had made a *cessio bonorum;* and the bank had acquired a right to a dividend, whether a discharge was voted or not. The vote, therefore, was without consideration, and purely gratuitous. If binding, it was an abandonment of all future claim against the insolvent, in the event of his coming to better fortune, and by consequence, a discharge of the endorser. It gave up the property of the stockholders, without any value received.

When the directors proper of a corporation gratuitously destroy, or give up its property or rights, there can be no doubt they will be personally liable to stockholders for all consequent injury; but whether such an act could be invoked by a third person as binding upon the corporation, we do not think it is indispensable now to discuss. We will confine ourselves to the examination of the question directly presented here—the authority of the board of this branch so to affect the rights of the corporation; premising that the incapacity of the cashier, *virtute officii*, is clear. See *The Union Bank* v. *Bagley,* 10 Rob. 43.

The management of this corporation was placed by the charter in the hands of directors; but to the usual powers was superadded the unusual grant, that the deliberations of the board of directors shall have the same force and effect as the deliberations of the stockholders. But the language of the charter is very different when it comes to speak of the branch boards. After providing for the establishment of eight offices of discount and deposit, at various points out of New Orleans, the seat of the corporation itself, it provides that there shall be annually appointed by the board of directors of the Union Bank to administer the affairs of said offices of discount and deposit, five or seven directors, three of whom shall constitute a quorum; and said directors shall choose from among themselves a president, and shall be subject to all such regulations and rules as may be adopted by the board of the mother bank for the government of said officers, not inconsistent with the provisions of this charter. By sec. 35, provision was made for the appointment by the mother board of cashiers of those officers of discount and deposit, who were to furnish such security as may be required by the mother board. By the 30th section it was enacted that the directors of said offices of discount and deposit shall appropriate two-thirds of the capital of such offices to loans on mortgage, and one-third to loans on promissory notes or bills of exchange, and they were authorized to loan or discount upon notes secured by mortgage. By the 39th section, the rate of interest upon loans by these offices was established; and by the 40th section power was given to the mother bank to withdraw the country offices, in the event of their operations respectively not netting over a certain rate of interest.

No grant of power to the office at Covington, in the form of rules and regulations adopted by the board of the mother bank, having been shown, we must look to the charter alone for the powers of the Covington board; and, under the charter, we cannot consider them as vested with an unqualified control—the *jus utendi et abutendi,* but as limited agents, clothed with such authority only as was expressly granted by the charter, or was necessarily incident to the accomplishment of the objects contemplated by the charter in using a certain portion of the capital of the bank for loans and discounts, and keeping an office of deposit as therein provided. The power of making a donation of the property of the stock-

UNION BANK *v.* JONES.

holders, which, if we hold the discharge valid, has been virtually exercised in the gratuitous release of *Terrell* and of the defendants, was not, we think, within the legitimate sphere of their authority.

The defendant has not shown that he has been in any wise injured by the attempted discharge of *Terrell;* but if he had been reduced into inactivity against *Terrell* by the conduct of the board, the responsibility cannot be thrown upon the principal of the agents who thus usurped authority. The power of the Covington board was the creature of a statute, and as such was known to the defendant; and a party can derive no benefit from the known usurpation of power by the agent on whose acts he relies.

The note appears to have been properly protested, and the objection made to the certificate of notice, was considered and overruled in the case of the *Union Bank* v. *Jones, ante* p. 220.

It is, therefore, decreed that, the judgment of the court below be reversed, and that plaintiffs recover from the defendant the sum of $540, with interest from the 26th day of April, 1842, until paid, at the rate of seven per cent per annum, and costs in both courts.