## D. CASEY *v.* JAMES PENNOYER.

An agreement between parties for the sale of a vessel, in which it is stipulated, that upon the payment of the notes given for the price, the vendor will execute a formal act of sale, will be regarded between the parties as an actual sale, and the purchaser may be compelled to pay the price.

APPEAL from the Fourth District Court of New Orleans. *Strawbridge*, J. This suit was brought on several promissory notes and bills of exchange given by the defendant, for the purchase of a steamboat. The defendant denied his liability, upon the ground that the vendor had never executed title to him. The judgment of the district court was in favor of defendant, and the plaintiff appealed. The following is the agreement, out of which the controversy arose :

" This agreement made and entered into this 11th day of November, in the year 1845, between *William H. Brown*, of the city of New York, of the first part, and *James Pennoyer*, of New Orleans, of the second part, witnesseth as follows :

" Whereas, the said party of the second part, has delivered to the party of the first part, six drafts or bills of exchange, and two promissory notes of the dates, and for the amounts following, viz : One draft drawn by the said *Pennoyer* on *Thomas Barrett*, of New Orleans, for one thousand and seventy-five dollars ($1075,) dated September 25th, 1845, and payable thirty days after sight; one other draft drawn by the said *Pennoyer* on the said *Barrett*, for one thousand and seventy-five dollars ($1075,) of the same date, and payable sixty days after sight; one other draft drawn by the said *Pennoyer* on the said *Barrett*, of the same date, for eight hundred and fifty dollars ($850,) and payable ninety days after sight; one other draft drawn by the said *Pennoyer* on the said *Barrett*, of the same date, for eight hundred and fifty dollars ($850,) and payable four months after sight; one other draft drawn by the said *Pennoyer*, for one thousand and seventy-five dollars ($1075,) of the same date, and payable thirty days after sight; one other draft of the same date, drawn by the said *Pennoyer*, for one thousand and seventy-five dollars ($1075,) and payable sixty days after sight; one promissory note drawn by the said *Pennoyer*, payable to the order of the said *Brown*, for two thousand and five hundred dollars ($2500,) dated October 1st, 1845, and payable seven months after date ; one other promissory note drawn by the said *Pennoyer*, payable to the order of the said *Brown*, for two thousand six hundred and fifty dollars, of the same date, and payable fourteen months after date.

Now, if the said drafts shall, each and every of them, be accepted, and he, the said *Pennoyer*, shall cause them to be paid, as they and each of them respectively become due and payable ; and if he, the said *Pennoyer*, shall pay, or cause to be paid, each of the said promissory notes, as they shall respectively become due and payable, according to the terms thereof, he, the said *Brown*, for himself, agrees that when the last payment shall be made, that he shall and will, by a bill of sale properly and legally executed in due form of law, transfer and convey to him, the said *Pennoyer*, all the interest in and title to the one undivided half of the " steamboat Telegraph, of New York."

" And it is mutually understood and agreed, by and between the parties, that the aforesaid drafts and notes were given for the purchase of the said interest in and title to the said steamboat; and the said *Pennoyer*, for himself, agrees that the said drafts shall be accepted and paid, as they and each of them shall respectively become due and payable, according to the terms thereof; and that he, the said *Pennoyer*, shall and will pay, or cause to be paid, each of the said promissory notes, as the same shall respectively become due and payable.

" And it is further mutually agreed, by and between the parties, that whenever it may be advantageous to the parties hereto, the said steamboat may be sold and conveyed to any purchaser or purchasers, before the last payment on the notes aforesaid shall become due.

"In witness whereof, the parties have hereunto set their hands, the day and year first above written. JAMES PENNOYER, WILLIAM H. BROWN. In presence of *Samuel Lea*."

*Wolfe* and *Singleton*, for plaintiff. *C. Roselius* and *Vandalson*, for defendant. The judgment of the court *(Eustis*, C.-J. being absent,) was pronounced by

SLIDELL. J. We consider the agreement of the 11th November, 1845, taken in connection with the other evidence in the cause, as establishing a sale by *Brown* to *Pennoyer*, of one-half of the steamer, at the price represented by the bills and notes recited in it, and delivered by the vendee to the vendors; and that the reason why the formal bill of sale was not to be executed by the sellers, until the notes and drafts were paid, was for the mere purpose of the vendor's security. The position of the parties *inter se* is substantially the same as it would have been, if *Brown* had, at the time, given *Pennoyer*, in consideration of these drafts and notes, a formal bill of sale of one-half of the steamer, and taken, simultaneously, a mortgage of the one-half from the buyer, to secure their payment.

That the defendant so interpreted the agreement, is shown by his own conduct; for, in the note of evidence, is an admission by the defendant, that *Pennoyer* always claimed to be the one-half owner of the steamer, while she was in New Orleans; and this interpretation also accords with the admission of both parties, contained in the note of evidence, that *Pennoyer* is entitled, as between him and *Brown*, to a credit for one-half the proceeds of sale of the steamer, which remained after the payment of the New Orleans claims against her, and to a like credit for the amount paid by underwriters; both of which amounts had gone into *Brown's* hands.

In the note of evidence, we find the following admission made at the trial: "It is admitted by all parties, that immediately after the sale from *Brown* to *Pennoyer*, *Pennoyer* took charge of the steamer, as master, and started from New York to New Orleans; that on her voyage, she met with bad weather, and was finally brought into New Orleans, where she was repaired at a very heavy expense;

98

CASEY
*v.*
PENNOYER.

that she was seized in the United States court, and sold to pay those expenses of repairs. By the agreement, *Pennoyer* became the owner of one-half. *Res perit domino.* The one-half was, from the date of the sale, at *Pennoyer's* risk. If the vessel had perished at sea, he would not have been exempted from the payment of the price.

Speaking, therefore, upon the written agreement, and other meager evidence, which has been brought before us, we think *Brown* and *Pennoyer* became *inter se*, on the 11th November, part owners of the steamer; and that the disasters which subsequently befell the vessel, and the judicial sale which resulted from them, whereby *Brown* was incapacitated from executing a formal bill of sale, did not destroy the defendant's liability for the price.

It is therefore decreed, that the judgment of the district court be reversed, and that this cause be remanded for a new trial; the costs of this appeal to be paid by the appellee.