WALTON, SANFORD & Co. *v.* BIRCH—SEWARD, Intervenor.

SIMULATED SALE.—The case presents only questions of facts.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J. *E. L. Gould,* for plaintiff and appellant. *L. Brewer,* for defendant. *T. S. McCay,* for intervenor.

BUCHANAN, J. *Henry T. Seward* claims, by third opposition, the contents of a retail grocery, seized by plaintiffs in a suit against defendant. The plaintiffs have answered the third opposition, by pleading the simulation of the sale, under which the opponent claims. The evidence shows that in the early part of January, 1850, the defendant purchased of plaintiffs, who are wholesale grocers, a large bill of groceries, representing himself to be fitting up a new store for the retailing of goods of that kind, and to be a man of means. He paid half the bill, or eight hundred dollars in cash, and gave his two notes dated the 8th January, 1850, one for four hundred dollars at sixty days, and one for three hundred ninety-nine dollars and twenty-one cents, at ninety days after date. A few days before the maturity of the first note, to wit: on the 27th February, 1850, defendant sold to *Henry T. Seward,* by an instrument in writing, attested by two witnesses, the entire contents of the house occupied by him as a grocery, at the corner of Poyfarre and Magazine streets, according to an inventory, together with the lease of the premises, for the sum of twelve hundred dollars, of which two hundred in cash and the remainder in three notes of the vendee to his own order, for $334 33 each, payable at six, twelve, and eighteen months. The inventory annexed to the bill of sale, showed seven hundred and twenty-four 72-100 dollars worth of groceries, and four hundred and seventy-five 25-100 dollars worth of fixtures. The purchaser, *Seward,* had been since about the beginning of January, 1850, clerk of defendant, or from the commencement of defendant's business as a grocer. Defendant had previously been employed on a steamboat. He began business with the goods bought of plaintiffs. The intervenor, previously to *Birch's* opening the store, had been employed as clerk at fifteen and twenty dollars a month, and was not known to possess any money. After the sale from *Birch* to *Seward,* the former continued to attend in the store. He occupied with his family, appartments which communicated with the store. When the Sheriff executed the writ of sequestration on the 12th March, 1850, *Birch* is proved by one witness to have used the following expressions to *Sanford,* one of the plaintiffs : "now you have my goods, and I wont pay you a cent"; and also, that "had he been present, instead of the young man that was there when the goods were seized, there would have been blood spilled before *Sanford* could have gone round his counter." And, another witness, the Sheriff's officer, testifies that when he made the seizure, *Birch* observed that "he had the money in his pocket, but would spend it in a lawsuit before Mr. *Sanford* would accomplish his suit." And, another sheriff's officer proves that *Birch* had more to say than *Seward,* and when told that the Sheriff would not seize all the stock of goods under the writ, appeared very anxious to have the store shut up, in order to sue the Sheriff for damages. It is also in proof that three

months after the pretended sale to *Seward, Birch* bought a hogshead of sugar for the store at the corner of Magazine and Poyfarre streets, stating said store to be his own, and paid for the sugar. We view these facts as inconsistent with the supposition of the sale being bona fide. We may add, that the cause was only submitted to the District Court three years after the date of that sale, when consequently all the notes given for the price were long past due; yet there is no proof of intervenor having paid them, or any of them, although the seizure did not cover all the goods sold, nor was the store closed by the Sheriff. And this fact is the more significant, as there was a lame attempt to show that the notes had been negotiated before maturity.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed, and that there be judgment in favor of plaintiffs and against the intervenor and third opponent, *Henry T. Seward*, with costs in both courts.