(40 South. 593.)

No. 15,728.

BARFIELD v. SAUNDERS.

(Feb. 12, 1906.)

116   13
c118   97
116   136
f117   393
116
122
122

1. VENDOR AND PURCHASER—CONTRACT—CONSTRUCTION.

The promisor and the promisee had agreed upon the terms and the conditions of the sale of land by the former to the latter. Upon the face of the papers it appears that upon the payment of the price the promisee, who was in possession ostensibly as tenant, was to become the owner.

2. SAME—SALE BY VENDOR TO THIRD PERSON.

The promisee made the first payment of the price and the condition from that moment was analogous to à sale. The promisor subsequently undertook to sell the property to another person. This, under the condition of the agreement, could not legally be done.

3. EVIDENCE—PAROL EVIDENCE—RECEIPT.

The receipt contains evidence of an absolute promise of sale. It was not exclusively a receipt which can be explained by oral evidence. To the extent that it was a promise of sale and evidenced the consent, the price, and the thing, it could not be added to, changed, or explained by parol evidence.

It was not ambiguous. There was no error or fraud shown. It was evidence of a promise which became an absolute sale on vendee complying with his part of the agreement.

4. PETITORY ACTION—RECONVENTION—DAMAGES.

Demand by way of reconvention was cumulated with defendant's defense; that is, that he had been violently ousted from the property without observing the forms of law. This demand was sustained by the testimony and damages allowed in reconvention.

5. SAME—DECREE—PARTIES.

The vendor to plaintiff in the petitory action and defendant in the jactitation action is not a party to the suit, and cannot, therefore, be ordered to go through the form of making a deed. The order of the district court in this respect is not enforceable.

6. SAME.

The judgment itself is to be taken as a title.

(Syllabus by the Court.)

Appeal from Twelfth Judicial District Court, Parish of De Soto; John Bachman Lee, Judge.

Action by Westley Barfield against D. W. Saunders. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

Hall & Jack, Charles Wheaton Elam, and James Wilson Parsons, for appellant. William Crosby Pegues and Murff & Webb, for appellee.

BREAUX, C. J. Slander of title was originally plaintiff Barfield's cause of complaint. His suit for that cause was brought in February, 1904.

Defendant Saunders answered, setting up title under an authentic act of sale, and thereby changed the action into the petitory, in which he became plaintiff in the petitory action.

Plaintiff Barfield answered plaintiff's petitory suit by replication, and claimed to have obtained title from C. W. Blair, who was also the author of Saunders, the nephew of Blair.

The original owner from whom each of these parties, plaintiff and defendant, claimed to have obtained their respective titles, was a public merchant in the town of Mansfield. In business matters the uncle and nephew were in close touch. The latter, Saunders, had full knowledge of the transactions between Blair and Barfield.

It is candidly and properly admitted on the part of Blair and Saunders that the title which the latter holds should not be an occasion for depriving Barfield of any legal right he may have. C. W. Blair does not admit as a witness that he sold the property on the terms and conditions claimed by Barfield. His contention and that of Saunders is that he leased the property to the asserted owner, the plaintiff, for a number of years. His contention also is that he took notes from his lessee, Barfield, for the rent, and that he and the lessee just named, agreed that upon the payment of all the rent notes by the lessee, and payment besides of all his other debts to the lessor, that then the lessor Blair would execute to the former a title as owner of the "Prudhomme Place" in De Soto parish.

In February, 1902, Barfield executed five promissory notes in favor of his lessor, Blair, for the sum of $400 each, and interest from October 1, 1901, falling due in five annual instalments. Barfield paid one of these notes in full, and Blair indorsed thereon the following, which we copy, because it has substantial bearings upon the issues:

"Indorsed May 1st, '03. Interest paid on this note to May 1st, '03. Paid on this note $340.40. Paid in full June 18th, '02. [Signed] C. W. Blair.

"This note goes as a payment on the Prudhomme Place, leaving four more notes, for $400 each, with interest from October 1st, '01, due 1903, 1904, 1905, and 1906. [Signed] C. W. Blair."

In December following Blair sold the Prudhomme place to Saunders. He also sold his mercantile business in the town of Mansfield to him. Blair denies that he sold the property in question, viz., the Prudhomme place, to Barfield. He says that he leased the property for a stated number of years; that he took the lessee's notes before mentioned.

The lessor, Blair, states, as a witness, that on account of the indebtedness of Barfield on these notes Saunders declined to make advances to the tenant, Barfield, apprehending that Barfield, because of his indebtedness just mentioned, would be unable to pay. It was then agreed that each, Blair, the uncle, and Saunders, the nephew, would be entitled in alternative order to a bale of cotton of Barfield's crop as he made it, and on these conditions Saunders then made advances to Barfield.

There are further details asserted that are not noted for the reason that the issues can be decided without them.

Blair asserted, in substance, that in order to induce Saunders to make advances he, in addition to the agreement to divide the cotton as before mentioned, promised Saunders to protect his claim for advances, and that he promised Saunders that, in case of Barfield's default in payment, he would sell the property which he had promised to sell to Barfield to the merchant, Saunders. The

merchant's account increased. It is said that Barfield defaulted in his promise to pay his store account, and the sale of the land which Barfield claims was made by Blair to Saunders.

Barfield sets up a different state of facts. He alleges, in substance, an unconditional promise on the part of Blair to sell the property to him, and he alleged, further, that the notes before referred to represent the purchase price. Barfield paid the first note, as the foregoing indorsement on the note paid shows.

In December, 1903, Blair sued Barfield upon the second note described in the preceding paragraph, and obtained a writ of provisional seizure, under which the movable property was seized.

Barfield tendered to Blair a sum equal in amount, the former asserts, to the principal and interest of the four notes, and demanded title.

In his petition, Barfield has cumulated with his action for slander of title a suit for damages against T. W. Saunders, on the ground that Saunders forcibly ejected him from his home on the land which he claimed to have bought from C. W. Blair as above stated. He alleges that Saunders ordered his (Barfield's) wife and children away from his home, and that for two days their shelter was under a tree. It was in winter. A part of the time it rained.

### Judgment.

Blair's promise to sell gives rise to the first question for decision. Both parties—that is, Blair and Barfield—agree in stating, under oath, that the lessor, Blair, had promised to sell to his lessee, Barfield. The difference between them relates to the amount which was to be paid for the land by Blair, the promisee. Barfield says that he was to pay the amount of the notes and go into possession of the property as owner. But Blair brings in other claims, the payment of which he says was a condition precedent to the sale, which claim had passed into the hands of Saunders and was protected by Blair as before mentioned.

To repeat in other words, from any point of view, the lessor Barfield was to become absolute owner in futurum. He had acquired that right. The property was to be his for the amount of the notes, as he contends, or for the amount of the notes with store account superadded, as contended by Blair and Saunders. This promise to sell had legal effect which leads us to the conclusion that even if it be as contended for by Blair and Saunders the property could not be transferred to Saunders as Blair had done. In law it was due to Barfield to place him in default. The evidence does not disclose that this was done. But what about this promise to sell made by Blair?

We state in the first place a principle that when a promise to sell has been accepted it has an effect analogous to a sale. The buyer acquires a real right and he has claim upon the property. Hug, vol. 8, p. 1179. French Commentator on corresponding article of our Code on the subject. Civ. Code, art. 2462; Code Nap. art. 1589.

This being our view of a promise to sell we pass to a consideration of the receipt indorsed on the note, as shown by the copy before inserted here.

It becomes necessary to decide whether it was possible to add to, explain or vary this receipt by oral testimony. If it was not possible to explain it or add to it by verbal evidence, then the indorsement will have to be taken as controlling the issues, and Barfield is, unquestionably, the owner. If it was possible, then Blair or his vendee is to become the owner.

We lay it down as a proposition supported by repeated decisions that parol evidence was not admissible to prove beyond that which is contained in the receipt. It is not an ordin-

ary receipt, or a quittance for a sum of money paid which may be explained by parol evidence.

The accepted promise to sell had legal effect. The promisor seems to have considered it as a mere pollicitation from which he could withdraw at pleasure. The accepted promise had been partially executed by the payment of the first installment, and he could not, under the state of facts here, withdraw or recall his promise. The amount which the promisor says was due in addition to the stated price is not sustained by legal evidence. There is only the verbal evidence of the promisor.

As it was a promise to sell real property, the price could not be changed on the verbal testimony of the promisor. Quoting: "Transfer of immovable property must be in writing." Civ. Code, art. 2275. This applies as well to an accepted promise to sell as to a sale.

Our conclusion on this point brings us to a consideration of the receipt indorsed on one of the notes before referred to, and to the reference in this indorsement to other notes due by Barfield. We will here state the fact that there was a promise to sell made evident by the indorsement in question. It shows a concurrence of mind between the two parties, that is, that one promised to sell and the other to buy. The consideration was fixed in this indorsement by the reference made therein to other notes to mature at later dates. The property was sufficiently described in the indorsement for identification. The indorsement referred to the property which the promisor promised to sell by a name by which it had been well known since the year 1866. Touching this indorsement and the name therein, the place was as well known under that name, "Prudhomme Place," as other places are whose boundaries are well defined in a deed.

The parties to this receipt could contradict or add to it only in case of error or fraud. There does not appear to have been either in this case. This case is stronger than the two cases cited infra. Here the indorsement evidences a title translative of property. These decisions bearing on the issues here are of a comparatively recent date. Dietzgen v. Kokosky, 113 La. 450, 37 South. 24, 66 L. R. A. 503; Davies v. Bierce, 114 La. 663, 3 South. 488, citing a number of decisions in which full effect was given to a receipt covering other than a mere release or acquittance.

Learned counsel for promisor have cited Thompson v. Sheriff, 40 La. Ann. 712, 5 South. 58, in which the court held that no sale had been made of the property, but that a promise was made conferring "the right on the promisee to compel performance."

We are at a loss to see in what respect this decision adds anything to the defense. The court held in the cited case that the receipt was not a sale but a promise to sell which conferred the right to require specific performance, that is, that the promisee had right to the property.

In the pending case we hold that the receipt was a promise to sell which had not only been accepted but partially executed, and which grants to the promisee all the rights of a vendee from the day that he partially executed his promise by paying one of the notes. A similar view was expressed in Collins v. Desmaret, 45 La. Ann. 111, 12 South. 121. The court recognized a binding effect of a promise to sell.

In Baldwin v. Morey, 41 La. Ann. 1105, 6 South. 796, another decision cited by the promisor, it was held in accordance with the written agreement that the title remains with the vendor as shown by the syllabus, but it was not decided that a promise to sell after partial execution of the terms and conditions was not binding.

The remaining decisions cited have been read and considered in the order that they are cited in the brief.

They are not analogous cases to the pending case. These cases cited by plaintiff Saunders substantially hold that facts might be inquired into where there is error or fraud, or where a consideration is wanting. In the case in hand, the question of consideration does not arise under the terms of the agreement. We have said before that it was substantially a sale, the terms of which could not be changed.

There was a translation of property which was made complete by payment of the first note and tender of the notes representing the purchase price, payable at dates subsequent to the first. From the time that the promisee complied with his promise the sale became absolute.

We pass to another issue in the case, the facts relating to which are briefly stated in our statement of the facts. The defendant in the petitory action, Barfield, and his family were illegally ousted from the place. They were forced to find shelter under a tree for two days.

Having acted without right, this court cannot see that there was any error committed by the judge of the district court in condemning plaintiff in the petitory action to pay $150 damages for the ill treatment and the illegal action. Plaintiff in the petitory action, in the brief, mentions that C. W. Blair, not a party to the suit has been condemned to make title as vendor to the defendant as vendee. This was ultra petitum, and in order to adhere to the pleadings we will have to change that much of the judgment, and hold that judgment as rendered shall serve as title, and as having the effect of recognizing Barfield, the defendant, as owner of "Prudhomme Plantation."

It is therefore ordered, adjudged, and decreed that the judgment appealed from is af-firmed, except that portion of the judgment which orders C. W. Blair to make a deed to Barfield, vendee, as the judgment is to stand for a title translative of property.

It is further ordered, adjudged, and decreed that plaintiff Barfield is the owner of land situated in sections 33 and 34, in township 13, of range 12, beginning at the corner of sections 33 and 34 and sections 3 and 4, and running thence east 25 chains, to a post; thence north 40 chains, to a post; thence west 10 chains, to a post; thence north 40 chains to the line between sections 27 and 34; thence west on said line 15 chains, to corner of sections 27, 28, 34, and 33; thence south 39½ chains, to Coule des Lairds; thence on traverse of said Coule S. 28° W., 4 chains; S. 55¼° W., 6 chains; S. 30½° W., 5 chains; S. 40½° W., 3 chains; S. 12¼° E., 2½ chains; N. 57½° E., 1½ chains; S. 39½° E., 2½ chains; S. 58° E., 6½ chains; S. 2° W., 5 chains; S. 37½° W., 3 chains; S. 12° E., 2½ chains, S. 25¾° E., 13 83/100 chains; and south 1½ chains—to place of beginning, with all improvements thereon, containing 180 acres, more or less.

The costs of appeal to be paid by the appellee.