NICHOLLS, J.
The plaintiff corporation alleges: That it is the owner of certain real property, which it describes, as would appear by act of sale and deed of purchase to petitioner from J. D. Calhoun, of date August 1, 1907, hereto annexed and made part hereof, which was duly recorded in the conveyance records of said parish, on the 7th day of August, 1907, in volume 27, page 249.
That it acquired said property from J. D. Calhoun, then and still a resident of the parish of De Soto, by and through his duly appointed and qualified agent and attorney in fact, R. B. Hill, of the said parish of Bossier, acting under and by virtue of a written mandate and power of attorney duly recorded in the conveyance records of the said parish. That R. E. Wyche and J. B. Ardis, well knowing of the purchase by petitioner, and with the view of beating and defrauding petitioner out of said property, made what purports to have been a purchase of said lands from Calhoun, on or about the-day of August, 1907, and now claim to be the owners thereof, well knowing that said property belongs to petitioner, and that petitioner had purchased said property from Calhoun long before the date of their pretended purchase thereof. That Calhoun well knew that, at the time of the pretended sale to Wyche and Ardis, his agent, with full and ample power to do so, had sold said property to petitioner, and was informed of said sale at the time of signing said pretended sale thereof to Ardis and Wyche, and made said pretended sale with the view and hope of defeating the title which petitioner then had to said property through the sale thereof by his duly authorized and appointed agent and attorney in fact.
That it paid of the purchase price of said *103 land the sum of $500, and had offered to pay the balance thereof to Calhoun on the cancellation of the said pretended sale to Ardis and Wyehe, which constituted a cloud on its title to said property, and was ready and willing to pay the balance of said purchase price whenever said cloud and pretended sale was canceled from the records of said parish.
In view of the premises, petitioner prays for service and citation hereof on said Wy-che, Ardis, and Calhoun, and, after due delays, for judgment declaring it to be the owner of said land, and placing it in possession thereof, and canceling and annulling the said so-called sale made to Wyche and Ardis, and for all orders and decrees, for cost, and general relief.
Wyche and Ardis answered. They pleaded a general denial. Further answering, they admitted that they acquired the property described from Calhoun on the 6th of August,-1907, by act of sale duly recorded in the conveyance book of the parish of Bossier for the consideration therein recited, to wit, $3,609.30, which they paid to Calhoun in cash. They averred and affirmed that they purchased said property in good faith and without knowledge of any previous contract or arrangement for the sale of the said property by R. B. Hill, the alleged agent of their co-defendant, J. D. Calhoun, and with no intention to injure or defraud the plaintiff.
Respondents averred that the pretended contract entered into by the said Hill with the plaintiff at most amounted only to a promise of sale, and that no part of the consideration as therein recited had been paid to Calhoun, or to his alleged agent, Hill ; that if they should be evicted from said property they would be entitled to a judgment in warranty against Calhoun for the purchase price of said property to the extent of the full sum of $3,609.30, with legal interest from date, payment for said land; and respondents now call Calhoun in warranty herein, to the end that he may be required to defend respondents in their title to said property.
Further answering in the character of plaintiffs in reconvention, respondents averred that the plaintiff in its petition charged that respondents through fraud obtained title to said property with the view of beating and defrauding.it out of said property; that said charge was made willfully and maliciously on the part of the plaintiff, without warrant in law or probable cause, the plaintiff’s agents and employés well knowing that the same was untrue at the time said charge was made; that said slander imputed to respondents was made without any foundation in point of fact or law, to the knowledge of plaintiff and with the sole view and purpose of injuring them as citizens in their standing as business men in the community in which they live, and for the express and declared purpose of damaging their reputation for integrity and fair business dealing in the commercial world; that said allegations were deliberately and purposely made by the plaintiff, without any foundation in law or fact as ■ aforesaid, as it well knew, for the purpose and with the intention of injuring, harassing, humiliating, and mortifying re-, spondents, which they had done, much to their detriment and injury; that there existed absolutely no cause or reason for such allegations to be made, as the same were false and untrue, and that said plaintiff well knew the same to be such when they were made; that said libel and slander had damaged each of respondents in the full sum of $5,000; and that they were entitled to recover in reeon-vention the said sums against plaintiff.
In view of the premises, respondents prayed that J. D. Calhoun be called in warranty herein and cited to appear and answer to plaintiff’s petition, and this call was warranty, and that, after due proceedings had, the plaintiff’s petition be dismissed at its *105 cost; and, should respondents be cast in this action, then respondents prayed for a judgment in their favor against said warrantor for the same judgment that might be rendered against them on the principal action— that is to say, for the sum of $3,609.30, with legal interest from the date of purchase of said land, the purchase price of said property as aforesaid, and for costs.
They further prayed that they have a judgment in recbnvention and recover from the plaintiff the sum of $5,000, for each of them as damages for the willful and malicious slander as hereinabove set forth, and for costs and for general relief.
Calhoun answered the call in warranty, and, answering the demands of the plaintiffs as warrantor, adopted all the allegations and the prayer of their answer to plaintiff’s petition.
He filed independently a separate answer to plaintiff’s petition, in -which, after pleading the general issue, he admitted that he sold the property described to his codefend-ants for a cash consideration of $3,609.30. He especially denied that he sold said property with a view of beating or defrauding the plaintiff, and, on the contrary, averred that he sold the property in good faith and with no intention of injuring plaintiff.
He admitted that on the 7th day of November, 1900, he executed by private act a power of attorney to Robert B. Hill, of the said parish, a certified copy of which was annexed hereto and made part hereof; that during the month of December, 1906, or January, 1907, he gave written instructions to Hill to make no lease or sale of said lands, and to enter into no agreement relative to the sale or lease of said lands, nor the sale or lease of mineral rights in same, without first consulting respondent, and instructing Hill to take said lands off the market.
He further showed: That some time prior to the alleged contract, as claimed by plaintiff to have been executed by Hill, Hill wrote respondent that he could sell said property for $5 per acre; that respondent declined selling said property for $5 per acre, and so advised 1-Iill, but agreed that he would accept $5 per acre for the said property, provided the purchaser would pay to him, the said Hill, his commission, and, further, that there should be reserved to respondent all of the mineral rights in and under said described lands, and, further, that respondent should receive rents for the present year; respondent agreeing, in the event of said sale, to pay taxes for the present year and to defray one-half of the expenses of transferring the property.
That by letter dated August 6, 1907, he was advised by Hill that the plaintiff herein would not pay $5 per acre and commission, and reserve to respondent absolute mineral rights in and under said lands, and that at the same time, with said letter, Hill submitted to respondent a deed, drawn to convey the said lands to the plaintiff herein for the consideration of $5 per acre, reserving to respondent the mineral rights in said lands for a period of 20 years; that this letter, with deed inclosed, was received by him on the 7th day of August, 1907; that on the 8th day of August, 1907, he received an offer from his codefendants for the purchase of said property, which offer he accepted; that the offer from his eodefendants reserved to him all of the mineral rights in and under said lands, and reserved for the use of an old servant during his lifetime 40 acres of land, as would be shown by said deed.
That about the 3d day of August, 1907, his codefendants, through an agent, offered to purchase said described lands, and that respondent refused to consider an offer at that time, for the reason that he had advised Hill that he (Hill) could accept $5 per acre for said property, provided the mineral rights in and under said lands were reserved *107 to him absolutely, together with rents for present year, as above stated, and that he did not sell until advised that plaintiff would not purchase on the terms and for the price offered.
That after he had executed a deed to his codefendants he received a message from Hill by phone to the effect that the plaintiff herein would pay $5 per acre and would reserve to respondent unlimited mineral rights in said lands, and that respondent advised Hill that he had disposed of the property to other parties, meaning his codefendants.
Respondent then averred that, during all of the time of the negotiations for the sale of said lands to the plaintiff in this suit, Hill was, as a matter of fact, acting as agent for the plaintiff, and, further, that the plaintiff and its agents and attorneys were aware of respondent’s instructions to Hill to make no agreement to sell the said lands without first submitting the same to respondent, and were further aware that respondent would not sell unless all mineral rights were reserved to him.
Respondent alleged and averred that the said agreement relied on by plaintiff was fraudulently entered into by Hill and the plaintiff, plaintiff and its agents and attorneys at the time well knowing that Hill had no authority to bind respondent, and 1-Iill pretended to act at that time under and by virtue of said power of attorney, but in point of fact acting in the interest and for the advantage of plaintiff in this suit, all of which would be fully shown on the trial hereof. Therefore respondent alleged that the said agreement, executed by Hill without his authority as aforesaid, and entered into by the plaintiff with full knowledge of respondent’s instructions to 1-Iill, was null and void as against respondent, and that respondent cannot be bound thereby.
He averred in the alternative that, in tho event he was held as a matter of law to bo bound by said agreement and contract as executed by Hill, then and in that event that the said agreement was void and not enforceable as against respondent for the following, to wit:
That no consideration was paid for the said agreement to sell as alleged; that, if any sum was paid into the hands of Hill, same was received by Hill as agent for plaintiff, and not as agent and representative of respondent; that whatever sum, if any, was paid to Hill, was then held by him as an agent for the plaintiff, unless it had been returned to plaintiff; that no amount thereof had ever been paid to respondent.
Further, in the alternative, respondent showed that in the event he was bound by the act of Hill in executing said agreement, and the same held to be a valid and binding obligation as against respondent, and in the further event that it was held that the $500 alleged to have been paid was in fact paid to Hill as agent for respondent, and that respondent was responsible and accountable for the same, then and in such events respondent showed that the said agreement was at most but a promise of sale, and not a sale as alleged, and that plaintiff under said agreement did not acquire title to said property, and that the recording of said agreement, if same was recorded as alleged, did not prevent respondent from transferring said land to his eodefendants with good and perfect title.
In view of the premises, respondent prayed that plaintiff’s suit be dismissed at its cost; that the pretended agreement to sell, as alleged by the plaintiff, be held as executed by Hill without authority, and null and void as against respondent; and in the alternative respondent prayed that, in the event said agreement was held to be an act of respondent as executed by a duly authorized agent, then that same be held as a promise to sell, without valid consideration and not enforce *109 able in law as against respondent, and in any event that bis codefendants be decreed to have good and perfect title to the said described lands as against plaintiff herein, and for such further orders and decrees as-were necessary, and for general relief.
On September 25th Calhoun filed an amended answer, in which he alleged: That the plaintiff cannot be held to have acquired a title to the property described in its petition, or to have acquired such rights in said property, as to prevent a sale of the same by respondent, under the agreement executed by R. B. Hill, as agent and attorney, on the 1st day of August, 1907, for the further reason that under said agreement Whited & Wheless, Limited, the plaintiff in this suit, is not obligated to accept title to said property and pay the purchase price thereof, less $500 alleged to have been paid with the signing of same; but, on the contrary, under said agreement, the said Whited & Wheless had the right to demand a return of the $500 alleged to have been deposited by them if titles were not satisfactory to them; that the agreement was so worded for the reason that the said Whited & Wheless, Limited, had full knowledge of the fact that the said Hill had no authority to bind respondent, and for that reason stipulated in said agreement that the $500 should be returned in the event that a deed satisfactory to them should not be executed by the said Calhoun, respondent, within 30 days.
That, in the alternative, if the said Hill had authority to execute the said agreement, which was denied, and if the said agreement, as executed, pledges the $500 alleged to have been deposited as a guarantee that the said Whited & Wheless would accept the title to said property within 30 days, then and in such event the said agreement is not such a one as gives the said Whited & Wheless, Limited, the right to demand of respondent the execution of a deed transferring to the plaintiff the said described property, and that, at most, if respondent is held to be responsible for $500 alleged to have been deposited with the said Hill, which is denied, nothing further can be demanded of him.
In view of the premises, respondent, adopting the prayer of his answer heretofore filed herein, prays that plaintiff’s suit be dismissed and his demands rejected for the further reasons as hereinabove set forth.
The district court rendered judgment rejecting plaintiff’s demand; also rejecting defendant’s reconventional demand, and decreeing that plaintiff pay the costs.
Plaintiff appealed.
On the 7th of November, 1900, John D. Calhoun, a resident of the parish of Claiborne, executed a power of attorney wherein he constituted and appointed Robert B. Hill, of Bossier parish, for him and in his name and stead to lease, sell, or make any other disposition whatever of all or any part of his property, both real and personal, and to sign, seal, and deliver any agreement, assignment, assurance, conveyance, or lease to any person or persons who shall purchase or agree to purchase such property, or any part thereof, and in due form of law to acknowledge any such investment necessary to the proper conveying or leasing said property, or any part of it and to do and perform all the necessary acts in the execution and prosecution of the aforesaid business, and in as full and ample a manner as he (Calhoun) might do if he were personally present.
This act was recorded in Bossier parish on February 26, 1901.
On the 1st of August, 1907, the following agreement was entered into between R. B. Hill, as agent of J. D. Calhoun, and Whited & Wheless, Limited:
“This writing evidences the following: That J. D. Calhoun, of De Soto parish, La., herein represented by R. B. Hill as agent, sells, transfers, and assigns to Whited & Wheless, Limited, a corporation created by and existing under the laws of Louisiana, domiciled at Alden *111 Bridge, Louisiana, and herein represented by its vice president, H. H. Wheless, the following described land, to wit: [Describing the property and declaring the quantity to be 721.86 acres, more or less] — for the consideration of three thousand six hundred and nine and so/ioo dollars, of which amount $600.00 has been paid in cash, the balance of said purchase price to be paid on the execution of a satisfactory deed of said Calhoun to Whited & Wheless, Limited. Said Calhoun has 30 days in which to perfect said title. It is also understood and agreed that said Calhoun is not required to incur any costs to perfect said title, and that said Whited & Wheless, Limited, have the right to take such title from as he has within 30 days from this date. It is further agreed and understood that the $500.00 cash, this day paid, shall be returned to Whited & Wheless, Limited, in the event that satisfactory title cannot he made to said lands, in which event this writing shall be null and void.”
This act was recorded in the conveyance book of Bossier parish on August 7, 1907. On the 8th of August Calhoun himself granted and sold the same property to R. E. Wyche and J. B. Ardis for the price of $3,009.30. That act was recorded in the conveyance book of Bossier parish on August 10th.
On August loth Whited & Wheless wrote as follows to Calhoun:
“Dear Sir: On the 1st day of August, 1907, we purchased from you, through your duly appointed and constituted agent, R. B. Hill, the 721.80 acres of land in Bossier parish, belonging to you, known as the ‘Pittman Place,’ for a cash consideration of $3,609.30, of which we have paid to Mr. Hill $500 in cash at the time of the purchase. We find that you made a sale of this same land to Mr. R. E. Wyche and J. B. Ardis, which deed to them was recorded after the deed to us was placed of record.
“We own this land, and owe you the balance on the purchase price, which we are ready and willing to pay when you have canceled the sale which you have purported to make to Wyche and Ardis; and you may consider this a formal offer and tender to you of the said purchase price of said land, subject, however, to the consideration [cancellation] of this subsequent sale to the parties named.
“You are further notified that, should it develop that we cannot hold this land under this sale, we shall hold you for whatever damages we have sustained on account of your failure to abide by the same. Yours truly,
“[Signed] Whited & Wheless, Limited,
“By B. P. Whited, Pres.”
On the 27th of August the present suit was filed. In the brief filed on behalf of the plaintiffs the following propositions are submitted for consideration:
(1) Where parties to a sale of land have agreed in writing upon the price and terms of sale and a description of the land sold, it will be regarded, not as an agreement to sell, but as a sale, although there may be a stipulation that the vendor is to make a formal title. Stephens v. Chamberlain, 5 La. Ann. 656; Casey v. Pennoyer, 6 La. Ann. 776; Pignatel v. Drouet, 6 Mart. (N. S.) 432; Poeyfarre v. Delor, 6 Mart. (O. S.) 10; Bulkley v. Whited & Wheless, Limited, 104 La. 125, 28 South. 922.
(2) When a promise to sell has been accepted, it has an effect analogous to a sale. The buyer acquires a real right, and. he has a claim upon the property, and, when partially executed, vests in the promisee all the rights of a vendee from the day he has partially executed it. Barfield v. Saunders, 116 La. 136, 40 South. 593; Collins v. Desmaret, 45 La. Ann. 111, 12 South. 121; Barrett v. His Creditors, 12 Rob. 478; Avery v. Allain, 11 Rob. 439.
(3) A promise of sale, duly accepted and recorded, confers a real right on the purchaser, of which third persons are bound to take notice, and such right cannot be defeated by a subsequent sale of the property, recorded prior to the execution of the deed pursuant to the promise of sale. Lehman v. Rice, 118 La. 975, 43 South. 639.
(4) A power of attorney to an agent, empowering him to sell all the property of a principal in a certain parish named, -is sufficient. It need not particularly describe the real estate to be sold. Valentine v. Hawley, 37 La. Ann. 303.
(5) A contract to convey and to furnish a good and satisfactory title is complied with by furnishing a good marketable title, free from reasonable doubt. Moot v. Business Men’s Ass’n, 157 N. Y. 201, 52 N. E. 1, 45 L. R. A. 666; Pennington v. Howland, 21 R. I. 65, 41 Atl. 891, 79 Am. St. Rep. 774; Latrobe v. Winas, 89 Md. 636, 43 Atl. 829.
On the part of the defense counsel submit the following syllabus: . . •
(1) In order to determine the character of an action, resort must always, be had to the prayer of the petition. Hood v. Segrest, 1 Rob. 109; Peck v. Bemiss, 10 La. Ann. 160; Millaudon v. Ranney, 18 La. Ann. 196; Edwards v. Ballard, 20 La. Ann. 170; Lagay v. Chieusse, 5 Rob. 132; Slocomb v. De Lizardi, 21 La. Ann. 356, 99 Am. Dec. 740; Kemper’s Heirs v. Hulick, 16 La. 44. The prayer of plaintiff’s petition, praying that it “be decreed the owner of the land and placing it in possession thereof,” necessarily constitutes this a petitory action, and all of the rules characterizing such an action must be applied to it, in order to determine the rights and obligations of the respective litigants. It is elementary that the plaintiff in a petitory action must establish his title clearly *113 as against the defendant in possession in good faith under deeds on their faces translative of property.
(2) In order to determine the true meaning of'a contract, courts look to the substance, rather than to form, and to all the circumstances and facts attending the transaction.
In Clay v. Bullard, 9 Rob. 308, 41 Am. Dec. 328, it was held that “contracts will be construed as the parties must be supposed to have understood them at the time of their execution.”
The intention of parties to a contract must be sought in the whole language and the surrounding circumstances, to which the instrument itself points. Peck v. Bemiss, 10 La. Ann. 100. We are to look at the substance and essence of contracts, rather than their mere form. Hutchings v. Field, 10 La. 237; Tete v. Lanaux, 45 La. Ann. 1343, 14 South. 241.
A contract containing several clauses is to be viewed as a whole, and the intention of the parties gathered from all its parts, to the end of giving practical effect to the instrument in the way intended. Lozes v. Segura Sugar Co., 52 La. Ann. 1844, 28 South. 249.
(3) An agreement, not self-acting, and having in contemplation another agreement or act to carry the first into execution, cannot be treated as a complete definite sale. McDonald v. Aubert, 17 La. 449; Bennet v. Fuller, 29 La. Ann. 663; Knox v. Payne & Harrison, 13 La. Ann. 361; Peck v. Bemiss et al., 10 La. Ann, 160; Garrett v. Crooks et al., 15 La. Ann. 483; Thompson v. Sheriff et al., 40 La. Ann. 715, 5 South. 58; Broadwell v. Raines, 34 La. Ann. 677; Baldwin v. Morey, 41 La. Ann. 1105, 6 South. 796; Fernandez v. Soulie, 28 La. Ann. 31; Collins v. Desmaret, 45 La. Ann. 108, 12 South. 121; Coal Co. v. Slack, 42 La. Ann. 107, 7 South. 230; Capo v. Bugdahl, 117 La. 993, 42 South. 478.
. To maintain a petitory action against the defendants, who are not trespassers, but hold under a deed on its face translative of property, the plaintiff must make out a better title as ■owner.
An agreement to sell, which has in contemplation the former execution of a transfer in the future, does not make the promisee the owner of the property. It gives him only the right of becoming so at a future time. Until a voluntary or forced execution of the promise, the ownership of the property remains in the promisor, and a simple promise of sale, without showing a compliance therewith, does not enable the prom-isee to maintain a petitory action for the property. Peck v. Bemiss, supra; Garrett v. Crooks, supra; Baldwin v. Morey, supra.
A promise to sell, when the thing sold and the price of it are agreed on, is so far a sale that it gives to either party a right to claim recta via the delivery of the things or payment of the price; but the promise does not place the thing at the risk of the promisee, or transfer to him the ownership or dominion of it. McDonald v. Aubert, 17 La. 448.
The case of Girault v. Feucht, 117 La. 276, 41 South. 572, was an action for specific performance, and not a petitory action, as in our case; and in Lehman v. Rice, 118 La. 975, 43 South. 639; the promisor joined with the promisee urging the validity of the sale, to the end of settling the question of ownership, and, besides, the proof showed that the defendant procured his title by fraud. As thus understood, neither one of the cases militates against the doctrine, herein contended for, that a bare promise of sale, not executed, is not a sufficient .basis to support a petitory action.
(4) Private instructions to a general agent, circumscribing his power, will not avail to shield the principal from liability to parties dealing with him in ignorance of the limitation; but it is equally true that, if such persons are aware of the private instructions, the principal is not bound. Am. & Eng. Ency. of Law, vol. 1, p. 995; Union Bank of Louisiana v. Jones, 4 La. Ann. 236; Clark & Styles, Agency, vol. 1, p. 486.
When a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his knowledge, and fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts, as he would have them, do not exist.
(5) The contract in the instant ease is what is designated in law as a nudum pactum — a naked fact — a bare agreement. It cannot be enforced, either at law or in equity. There was no obligation on the part of the promisee to take the property. The obligation depended entirely on the exercise of the will of the alleged purchaser, and comes clearly within both the letter and the spirit of article 2034 of the Civil Code.
The obligation of the vendee constituted a po-testative condition, from which it could recede at any time by simply declining to take the title. It assumed no obligation to the" vendee, and is, therefore, a one-sided contract, which it cannot enforce. Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; Landeche v. Sarpy, 37 La. Ann. 835; Blackshear v. Hood, 120 La. 966, 45 South. 957; McDonough v. Zacharie, 3 La. 318.
The contention that the agreement entered into on the 1st of August between the plaintiff and Hill, as agent of Calhoun, was a nudum pactum, for the reason that it lacked the elements required by law to constitute it a legal contract, is not tenable. It was made between parties having the legal capacity to contract in respect to the specified thing with reference to which the agreement was made, to which agreement the parties to the same consented.
Even if it were conceded that the agree *115 ment as made did not cause it to evidence a present “sale” of property, it certainly evidenced a “contract” between the parties. If the agreement was not a sale, it was certainly a contract of some kind (Civ. Code, art. 1764), which was binding between the parties according to its terms.
It is said that the agreement was null, because the plaintiff did not bind himself absolutely to take the property, but left it within its power to withdraw from the agreement if Calhoun’s title to it was not “satisfactory” to it; therefore the obligations which the plaintiff assumed were obligations contracted on a potestative condition, dependent solely on its will under article 2034 of the Civil Code, and those obligations were null and void.
But in this statement there is error. The carrying out by plaintiff of the obligation which it contracted in the act of the 1st of August was not dependent on the exercise of its sole will. It could be made by Calhoun to comply with those obligations, even though the title was not “satisfactory” to it, if in point of law it was one which it should legally have been satisfied with. If Calhoun’s title was not such as would not entitle him to demand a specific performance by plaintiff of its obligations, the agreement might contain elements proper for dissolving the agreement; but per se, and as made, the agreement was an existing contract. Mr. Calhoun had no right, because he may have conceived because of the actual character of his title, that he would be unable to successfully demand a specific performance, to ignore the obligation entered into on his behalf by his agent, and cut off at once the right, which had been specifically accorded to plaintiff, of accepting on the terms fixed such title as Calhoun did have. lie had no legal right to make the sale to Wycho and Ardis, and Wy-che and Ardis had no legal right to make a purchase of the property from Calhoun, with the act of the 1st of August then of record in Bossier, and as to the existence of which Mr. Wyche had some — though probably not very full — information independently of registry.
By the act of the 1st of August the plaintiff was accorded by Mr. Calhoun’s agent the right during 30 days of taking the property on the terms agreed upon, even if Mr. Calhoun’s title was not satisfactory to it. Having granted that right for 30 days, which right was based on the consideration of the partial payment already made and on the final payment to be thereafter made, neither Calhoun nor his agent could set it aside. They were estopped during that period from selling the property to any one else. The plaintiff before the expiration of the 30 days expressed to Calhoun his willingness to accept the title, such as it was; and it does so in the present suit. So far as Wyche and Ardis were concerned, it is immaterial whether the act of the 1st of August was a sale or a promise of sale; for, whether it was one- or the other, they were equally powerless legally to buy the property under the circumstances against the plaintiff. Thomson v. Mylne, 11 Rob. 349; Barrett v. His Creditors, 12 Rob. 478; Collins v. Desmaret, 45 La. Ann. 111, 12 South. 121; Banfield v. Saunders, 116 La. 136, 40 South. 593; Lehman v. Rice, 118 La. 975, 43 South. 639.
They are in the occupancy, rather than in the possession, of the property, for their claims date no further back than the 8th of August, 1907. They say that plaintiff must show that it has a better title to the property than themselves in this action. They say that it is a petitory action and that plaintiff has as yet no recognized right of full ownership; but it is not essential to a peti-tory action that the plaintiff should have a right to the full ownership of the property, involved in the suit in order to have recourse to a petitory action. It is enough that he has a real right on the property, which he is- *117 seeking to vindicate against the party occupying the same to the prejudice of that right. Code Prae. art. 5.
Both parties claim to hold under Calhoun. Neither contest that title. As between plaintiff and Wyche and Ardis, the former have unquestionably the better right. The latter are not concerned in the particular nature of the rights of the plaintiff, if they are of character sufficient to oust them and they are advanced by a plaintiff having the legal interest and right to enforce them against them. The plaintiff unquestionably has the right to have their alleged purchase set aside and declared null.
Mr. Calhoun denies that Hill acted as his agent in this transaction, but he cannot take his position in view of the fact that he was his agent under act duly recorded. Plaintiff dealt with him on the faith of the record and without any knowledge of private instructions given by him to his agent. We do not find “fraud” on the part of any one involved in this matter. Coming to the relations which plaintiff and Calhoun bear to each other and both to the property, it will be seen that part of the price has not as yet been paid and that the property has not as yet been delivered to the plaintiff. As between the plaintiff and Calhoun (the claims of Wyche and Ardis being set aside) matters are in such a position that the right and obligations of both can be adjudicated upon and enforced in this action.
For the reasons assigned, the judgment appealed from is reversed, and it is now, therefore, ordered, adjudged, and decreed that the plaintiff, Whited & Wheless, Limited, be decreed to be the owners of the lands, containing 721.86 acres, more or less, as described in its petition and the deed thereto annexed, subject, however, to the payment to J. D. Calhoun of the sum of $8,609.80 in cash within 30 days from the date of the registry of this decree in the lower court, and that the sale of the same lands by the said X D. Calhoun to R. E. Wyche and X D. Ardis1 be and the same is hereby decreed to be null, void, and of no effect, and the inscription thereof be canceled on the records of the parish of Bossier; and it is further ordered that said Wyche and Ardis do on their call in warranty have and recover of the said J. D. Calhoun the full sum of $3,609.30, with legal interest thereon from August 8, 1907, until paid, and costs; and it is finally ordered that the plaintiff do have and recover of the defendants costs of suit in both courts.