## No. 4871.

### Citizens' Bank of Louisiana *v.* Clarence L. James.

Defendant's refusal to fulfill a certain agreement with the Citizens' Bank in relation to the sale of a plantation to said defendant, on the alleged ground of an error of fact in the agreement, can not avail him.

Error is said to be the greatest defect that can occur in a contract, but the error must be in respect to the object of the agreement, the identity or quality of the subject. That is called error of fact which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.

In this case the error as to the value of the property which defendant agreed to buy, was no error of fact, but if it existed, an error of judgment. This is an error for which the law furnishes no relief. Besides, certain allegations of the defendant in reconvening for damages resulting from the pretended noncompliance of the bank with its allegations, contradict his own allegations as to his error about the value of the property.

It is not in the power of this court to force defendant to comply with his contract. The penalty he incurs for violating it, is the damage he has occasioned.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J. Jury trial. *Pitot, Labatt, Aroni & Clinton*, for plaintiff and appellant. *Spencer, Farrar & Reeves*, for defendant and appellee.

Morgan, J. Joshua James was indebted to the plaintiffs in a sum exceeding $109,000, of which $61,489 were due, on account of arreared installments and interest, and the balance, $47,620, in his stock note due on the first of April, 1867. To secure this debt, his plantation was mortgaged to the bank.

On the twelfth of March, 1867, the bank made an arrangement with Clarence L. James, through his father Joshua James (whose authority as agent is not disputed), by which the bank agreed to foreclose the mortgage against the plantation, and to bid thereon $55,000, and if purchased by it, to sell the same back with the mortgage stock attached to it to Clarence L. James for $50,000, payable in twenty years, in his stock note. It was also agreed that C. L. James was to deposit with the bank his notes of William T. Martin, trustee of the heirs of Barnard for $6250 each, to secure the payment of his stock note, the amount when paid to be used as follows: $10,000 to go in part payment of the stock note of C. L. James, and the balance to be used by him to improve the plantation.

The bank foreclosed the mortgage and bought in the plantation. It alleges that C. L. James has been in possession thereof from the date of their agreement; that he has never paid the installments due on stock debt; that the installments due amount to $6684, and that there is due ten per cent. on $50,000, according to its charter. It prays for judgment against him for $6684, with ten per cent. interest on $50,000 from fourteenth of March, 1868, and that the defendant be ordered to accept the sale of the property, and that he furnish his stock note for $42,216, payable fourteenth of March, 1871, and renewable according to the charter of the bank, or that in default thereof possession of the property be given to it, and that it have judgment against the defendant for $6000 for the use and enjoyment of the plantation since the date of his contract, and $5000 per annum from judicial demand until possession is restored to it.

Defendant admits the agreement. But he says that he faithfully complied with all of his stipulations, by depositing with the bank the two notes of Martin, and by tendering his stock note for $50,000, payable in twenty years. He avers that the bank failed to buy in the plantation until the month of October, 1869; that it collected a portion of the two Martin notes, and compromised the balance at a loss of more than half of the value thereof, and refused to accept his note in accordance with the terms of their agreement, and refused to make him a title to the property as was agreed; that on the faith of the agreement between them, he built upon the plantation improvements worth $5000; that in consequence of the uncertainty of his title, he has been prevented from improving the property so as to render the same productive, and has been unable to cultivate the same, and that he has thus, and by the bad faith of the bank, been damaged to the extent of $50,000. He avers further that the bank has not only ignored his rights to become the owner of the plantation under their agreement, but that, with the view of damaging him, actually bargained the place

to one P. J. Kennedy. He avers that at the time their agreement was entered into, and at the time the bank purchased, the property was not worth $20,000, and that the bank actually purchased it for $15,000, and that now, taking advantage of its position, it is attempting to extort from him double the price it paid for it. He avers that he entered into the agreement under the belief that he would be called upon to pay, in all, at the expiration of twenty years only $50,000, and that if his agreement is held to have obliged him to pay more than that sum, then he avers that his consent was given in error of fact, and should be declared null and void; in which event he avers that he is entitled to recover back from the bank the value of his improvements—$5000—and the amount of the Martin notes, now amounting to $25,000.

He also reconvened, and prayed for judgment against the bank for $50,000, resulting from its bad faith and tortious conduct, and that he be quieted in his title and decreed to be the owner of the property.

The case appears to have been submitted to a jury, who found a verdict for the defendant, and in accordance therewith a judgment was rendered amending the agreement sued upon for error, giving to the plaintiff possession of the property, and giving to the defendant a judgment for $5000, with legal interest thereon from twentieth July, 1870, till paid, and condemning plaintiff to pay costs.

Plaintiff has appealed.

Defendant's objection to complying with his agreement that the bank failed to buy in the plantation until October, 1869, is no excuse. The bank sold the property as soon as the papers necessary to carry on the suit, which had been lost, were found. Besides, the defendant went into possession of the property as soon as his agreement with the bank was made. Neither can he object to what was done with the Martin notes. The bank sued Martin on them. Martin offered a compromise, and the defendant agreed to it on condition that out of the $10,000 which Martin was to pay, $5000 was to go to him, and these $5000 he received. His defense that if his agreement with the bank made him responsible for more than $50,000, to be paid without interest, it is void on account of error of fact, can not, we think, avail him. Error is said to be the greatest defect that can occur in a contract, but the error must be in respect to the object of the agreement, the identity or quality of the subject. Pothier, p. 10. "That is called error of fact which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none." C. C. 1821. Now the defendant was not in error as to the existence of the thing which was the subject of his agreement with the bank, or its identity or quality. His error as to the value of the prop-

·erty which he agreed to buy was not error of fact, but, if it existed, error of judgment. This is an error for which the law furnishes no relief.

If the bank refused to take the note which he offered, it was, we think, because it was not the note which their agreement called for. It was expressly understood that the note to be given was a stock note, which by the charter of the bank bears interest. This must have been known to the defendant, as it was to his father, who conducted the negotiation for him, acting as his agent. In his testimony the father says he thought C. L.' James would have nothing to pay for several years, because the notes deposited by him would "pay the interest on the stock note to be given for several years to come, and the payment he would have to make would be about $2500 a year. The notes deposited with the Citizens' Bank as collateral security would have paid the interest and the ten per cent. of the principal for several years." Besides, the allegation that he has been damaged $50,000 by the bank not having complied with the terms of the agreement, is somewhat destructive of his allegation that he was to pay only $50,000 without interest. The damage he claims to have sustained is the profit he would have made if he had been enabled to cultivate the place. A place upon which a profit of $50,000 can be made in a few years, is certainly worth $50,000 to be paid for in twenty years, with six and a half per cent. interest per annum.

The allegation that he spent $5000 in improving the property, is rather inconsistent with his other allegation that the course of the bank prevented him from improving it so as to render it productive. We do not think it has been established that the negotiations which were for a moment pending between the bank and Kennedy with regard to selling the plantation to him, caused him any damage.

Defendant has been in possession of the plantation since the twelfth of March, 1867, and has enjoyed the revenues thereof. The number of acres of land under cultivation is fixed by the witnesses at two hundred. The rent of the land is worth five dollars per acre. He would, therefore, owe, in rent, $7000. The bank has received $5000 The improvements are worth $2500.

The bank asks that the defendant should be compelled to comply with his contract. It is not in our power to force him to do so. The penalty he incurs for violating it is the damage he has occasioned.

It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that there be judgment in favor of the Citizens' Bank, and against the defendant Clarence L. James, ordering him to accept the sale of the property and stock formerly belonging to Joshua James, and described in the

sheriff's deed of sale of the eighth of October, 1869, and furnish his stock note, dated March 12, 1867, and payable the fourteenth of March, 1871, for $50,000, with a credit thereon of $5000, and renewable according to the charter of the bank, or that in default thereof, within sixty days from the recording of this decree, that a writ of possession issue in favor of the bank putting it in possession of the property above described, upon paying to the defendant the sum of $500; defendant to pay costs in both courts.