## No. 11,074.

MRS. MARIE IDEALIE COLLINS, WIFE, ETC., VS. EDWARD J. DESMARET.

1. One proposing to purchase at a stated price, property advertised for sale at auction, if made to the real estate agents advertising the sale and upon the date of such auction sale, must be viewed in the light of a purchaser at auction and not as the vendee in a conventual contract of sale.

2. The paying of a certain stipulated cash depost at time of adjudication at an auction sale is not to be construed as a payment of part of the purchase price *as such,* but as the giving of an earnest to bind the bargain during the time titles are being prepared.

3. Such a proposition, though formally accepted, does not constitute a perfect and completed sale, but a promise of sale, only, that entitles the parties, respectively, to sue for specific performance or the payment of damages.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

### B. R. *Forman* for the Plaintiff and Appellee:

1. A contract of sale of real estate situated in the State of Mississippi is regulated in point of form, substance and validity by laws of that State. Suc-cession of Larendon, 29 An. 952.

2. The description of the land is amply sufficient under the laws of Mississippi Bingaman vs. Hyatt, 1 Smedes and Marshall's Chan. R. 437.

Collins vs. Desmaret.

3. The court will take judicial notice of the fact that the common law forms the basis of jurisprudence in Mississippi, except in so far as modified by statute, Kling vs. Sejourn, 4 An. 129; Copeley vs. Sanford, Exr., 2 An. 335.

4. The maxim *caveat emptor* applies to the sale of real estate in Mississippi. Etheridge vs. Vernoy, 70 N. C. 713; Wafsh vs. Hall, 66 N. C. 233.

5. The sale was for a gross sum, and not by the arpent; hence, there can be no diminution or abatement of the price. Kerr vs. Kuykendaell, 44 Miss. 145; Crompton vs. Prince, 44 N. W. 648; Appeal McCullough, 18 Am. 1180; Allen vs. Shriver, 81 Va. 174.

6. The measurements given are merely descriptive, and not a warrant as to quantity. Mess vs. Cheny, 3 So. Rep. 791; Rawle on Covenants for Title (4th ed.) p. 523.

7. The description by boundaries, *i. e.*, metes and bounds, will control a statement of quantity or length of one of the boundaries. Noble vs. Googins, 99 Mass. 231; Thompson vs. Sheppard, 5 So. Rep. 334; Tarbell vs. Bowman, 103 Mass. 343; Braugbaugh vs. Chapman, 13 N. E. Rep. 584.

8. It is a sale *per aversionem* by distinct boundaries, and not by the arpent or acre, and hence, there can be no abatement of the price. Hilliard on Vendors, pp. 271, 272.

9. The defendant has waived all the objection stated in his answer, by his declarations and acts prior to and at the time the deed was tendered to him by the notary. Moak vs. Bryant, 51 Miss.; Harris vs. Simrall, 560; Bright vs. Rowland, 3 How. (Miss.) 398; Morgan vs. Stearns, 40 Cal. 434; Dressel vs. Jordan, 104 Mass. 407; Gerris vs. Norris, 9 Cush. 167; Salisbury vs. Hatcher, 2 Y. and Col. Chan. 54; McMurry vs. Spiers, Law Rep., 5 Eq. 527, 542; Gregg vs. Von Phul, 1 Wal. 274.

10. There has been part performance of the contract by the payment of a portion of the purchase price, and it is now too late to rescind or to attempt to rescind the sale. In Lacon vs. Mertins, 3 Atk. 2, Lord Hardwicke said: "Paying of money has been always held in this court as a part performance." Mallins vs. Brown, 4 Comst. 403.

*Buck, Dinkelspiel & Hart*, for Defendant and Appellant, cited: Fry on Specific Performance, Secs. 170, 172, 203, 342, 479, 498.

The opinion of the court was delivered by

WATKINS, J. Alleging an indebtedness of defendant for the sum of $2250, plaintiff prayed judgment therefor. That demand was met, first, by an exception of no cause of action, and, it having been overruled, by an answer setting up a general denial and other defences. On the hearing there was judgment in plaintiff's favor for the sum demanded, and after an unsuccessful effort to obtain a new trial the defendant has appealed.

The plea of no cause of action is directed at the averments of the petition which are declaratory or descriptive of plaintiff's demand, and the insistence of defendant's counsel is that they

affirmatively show a *want* of right in her to recover the balance of the purchase price of a *completed* sale, and relegate her to an action, if any she has, for specific performance or damages for defendant's non-compliance with a *promise of sale*.

The substantial averments of the petition are that plaintiff authorized a firm of real estate agents to sell at public auction a certain piece of real estate for her. That said agents advertised said property for sale at auction on the 19th of November, 1892, and said property not being adjudicated on that date the defendant offered to buy same for $2500 cash, which offer was accepted by said agents. That defendant paid as part of the price $250 to said agents, and petitioner executed and tendered to him a good and valid deed of conveyance and "demanded payment of the price, and he refused to accept the title and pay the price."

The petitioner declares that she annexes a " copy of the offer and of the acceptance, and of the deed tendered, and of the putting in default, and *make them a part of the petition*."

Thus annexed and made part of the petition, the deed and other documents disclose the following pertinent facts, to-wit:

1. That defendant's offer was to purchase the property advertised for sale at auction for $2500 in cash.

2. That the agent's acceptance was absolute, though accompanied with the request that defendant " make the usual 10 per cent. cash deposit."

3. That the plaintiff executed and caused to be duly tendered to the defendant, through the medium of a notary public, a deed of sale in apparent conformity to law.

4. That the notarial act of putting the defendant in default declares that said act was duly presented and formally tendered to the defendant coupled with the demand " that he comply with *the terms of said agreement* by paying over the purchase price to said Mrs. McCaleb and accept said deed of sale."

5. That said authentic act of putting in default, then, especially recites that " said Edward J. Desmaret did then and there declare unto me, notary, that he *refused to accept said deed* and pay over said purchase price, for the reason that he labored under misapprehension when he agreed to purchase said property;" and, thereupon, said notary made public and solemn protest against said acts of the de-

fendant "in refusing to accept said deed of sale and pay over said purchase price in accordance with said agreement," etc.

In our estimation the recitals of the plaintiff's petition and accompanying documents only make out a *promise of sale*, and not a *completely perfected sale*, and that plaintiff has mistaken her remedy.

The code declares that "*a promise to sell amounts to a sale*, when there exists a reciprocal consent of both parties, as to the thing and the price thereof provided the promise "be vested with same formalities" as are prescribed for sales.   R. C. C., 2462.

But while it is true that a promise of sale thus made and evidenced by a written instrument *amounts to a sale*, repeated adjudications of this court demonstrate that it can not be treated and considered *as* a sale; and that it does not produce, between the parties, the relations of vendor and vendee—only producing those of *promisor* and *promisee*.

In McDonald vs. Aubert, 17 La. 449, the court had under consideration and interpreted a contract quite similar in purport to the one under consideration here.   The plaintiff in that case sued out an order of seizure and sale for part of the price of a plantation sold to the defendant, and the proceedings were enjoined on the ground of defects in the title conveyed.   On the trial it was developed that plaintiff's vendor had purchased two out of the eight arpents that were sold defendant, and which plaintiffs held under a contract of purchase for a stipulated price "to be paid down at the passing of the sale to them; and, as an earnest, they paid $1000."

Of this contract the court say:

"It is contended on the part of the appellant that under Articles 2437 and 2438 of our code, the promise to sell amounted to a real sale, to which a resolutory condition was attached by the giving of an earnest, but that the parties not having taken advantage of this condition, the sale became absolute, and that its validity can not be affected by the subsequent death of the vendor's wife.

"We can not concur in this view of the agreement entered into by these parties.   *   *   We understand Article 2437 to mean that a promise to sell, when the thing to be sold and the price of it are agreed upon, is so far a sale that it gives to either party a right to claim *recta via* the delivery of the thing or payment of the price; but such a promise *does not place the thing at the risk of the promisee, nor does it transfer to him the ownership or dominion of it.* If by

consent of both parties a promise to sell is canceled, such an agreement could not be viewed as a retrocession of the property; and third persons having a general mortgage recorded against the promisee would have acquired no right, or lien on the same, because it never belonged to their debtor."

In Peck vs. Bemiss, 10 An. 160, the court had under consideration and construed an agreement to sell, which was made by an agent, a designated piece of real property, for a stated price, one-third of which was to be paid cash when possession was given, and the balance in one and two years, with stipulation of interest and mortgage. Of this instrument the court say:

" In the search for the intention of the parties we are to look to the whole language of the instrument and the surrounding circumstances to which the instrument itself points. The plaintiff treated with *Sims* as an agent. The letters of instruction from *Overton* to *Sims*, then in his possession, construed in the most liberal sense possible, did not clothe him with authority to sign deeds of sale. The instrument, on its face, implies an inability *then* to give possession of the land, etc. * * * * Construing the language of the deed with the aid of these surrounding circumstances to which the deed, by implication points, our minds are brought to the conclusion that the instrument is a promise of sale, a reciprocal promise by which *Sims*, for Overton, engaged himself to sell the land to *Peck* at a future time, and Peck engaged himself to purchase it when possession should be given, on the terms of cash and credit designated in the instrument."

Proceeding to consider "what rights passed by the instrument itself, assuming the authority of *Sims* to sign it," the court said:

" This reciprocal promise of sale did not make *Peck* the owner of the land. It gave him only the right of becoming so at a future time. It created in his favor an obligation binding upon Overton, and by which, if he refused voluntarily to comply, he could be judicially constrained to a specific performance, or subjected, if he had put it out of his own power to comply, to an action for damages. Until a voluntary or forced execution of the promise, the ownership did not pass to *Peck*."

The court declined to consider a promise of sale and a sale as one and the same thing, and said:

" The law would be censurable for a strange violation of the prin-

ciples of reason and justice, and for a short-sighted view of expediency, if it deprived individuals of the right of making prospective agreements for a sale, or told them that if they make each other a reciprocal promise to buy and sell a thing a year hence, for example, that they should be absolutely considered as having made a present sale, with all the incidents of a shifting of the risk, revenues, accretion, etc., which pertain to a contract of sale."

For the foregoing reasons plaintiff's petitory action failed—the defendant's " exception to the character of the action " having been sustained—though plaintiff's right was reserved to sue for specific performance.

The foregoing decisions are particularly applicable to the facts of the present controversy, in two particulars; (1) in that plaintiff contends that defendant paid a part of the purchase price, and thereby confirmed the contract and made same an absolute sale; (2) in that the contract of acceptance of the defendant's offer to buy was by an agent, and consequently the sale was not only completed, but conventual.

But we take it to be clear that defendant's intention was to make a bid for the property *as at an auction sale*. His communication was addressed to the real estate agents by whom it was advertised for sale at auction; and the advertisement did not disclose the name of the owner of the property. The communication was made on the *very* day of the auction, as advertised, employing these words, viz.:

" I hereby *offer to purchase* the property at Waveland offered at auction *this day*." The reply of the real estate agents, of same date as the communication, acknowledges receipt of defendant's "*proposition* " and accepts same, concluding with the request that he will "please make the *usual* 10 per cent. deposit." There is in the record no mandate of any kind tending to show that Baumgarden & Friedricks were authorized, as *agents* of the plaintiff, to make sale to the defendants or to any one else. There is nothing in any of the written documents annexed to plaintiff's petition which evidences any such intention on their part. But, on the contrary, their demands of the defendant that he "make the *usual* 10 per cent. cash deposit," is convincing proof that they considered his proposition as a bid for the property at auction, and being such, they had undoubted authority to accept it as they did. Wheelage vs. Lotz, 44 An. 600.

8

This theory is further confirmed by the fact that the notary who put defendant in default acted, in so doing, at plaintiff's request, and not at the request of the auctioneers; and the act of sale that he tendered to the defendant in pursuance of the aforesaid proposition and acceptance was one under private signature, and purports to have been executed by the plaintiff, in her own right, to the defendant, several days subsequent thereto, and for a cash consideration of $2500 paid to her, thus clearly distinguishing it from the defendant's proposition to the alleged agents, and clearly evincing their want of capacity as *agents* in the transaction.

The foregoing statement of facts furnishes conclusive proof that the 10 per cent. cash deposit that defendant paid to the real estate agents was not intended as a payment of part of the purchase price, *as such*, but as the giving of an *earnest*, such as is customarily made as the necessary accompaniment of a bid at an auction sale, for the purpose of binding the bargain. The bidder is not thereby in any manner concluded from raising any objections he may have to the title when it is tendered to him; but, on the contrary, the very object to be attained by giving such earnest is to gain time to make inquiry and institute examination into the title to the property. To hold that such a payment concluded the proposer, would be to destroy sales at auction altogether.

When such a bid is made at auction, and the property is adjudicated to the bidder, the parties occupy the same relation toward each other as those existing between the promisor and promisee in a promise of sale conventually made. It produces only such an obligation as may be specifically enforced, but does not absolutely convey the property, or confer upon the promisor the rights of vendor.

The foregoing authorities have been repeatedly sanctioned and approved in many subsequent cases. Satterfield vs. Killen, 14 An. 606; Garrett vs. Crooks, 15 An. 483; Knox vs. Payne & Harrison, 13 An. 361; Broadwell vs. Raines, 34 An. 677; Thompson vs. Sheriff, 40 An. 712.

On reason and authority, we are of opinion that the plaintiff's petition and annexed documents disclose a promise of sale, and not a completed sale; and that a title to the property did not pass to the defendant, entitling plaintiff to the vendor's action for the payment of the price, though it does entitle her to claim specific performance, or damages for non-performance of his contract.

Entertaining this view, we are of opinion that the learned judge of the District Court improperly overruled the defendant's exception of no cause of action, and that the judgment appealed from should be reversed.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is now ordered that there be judgment sustaining defendant's exception of no cause of action and dismissing plaintiff's suit at her cost in both courts—reserving her right of action against the defendant for specific performance, or for damages for non-performance of his contract.

Rehearing refused.