PROVO STY, J.
Plaintiff brings this suit to compel specific performance of the following contract:
“Whereas, W. W. Girault has this day agreed to purchase from Widow Barbara Eeucht the property and all improvements thereon situated in the square bounded by St. Louis, Toulouse, Rampart and Basin streets, and known as Nos. 500 to 506 Basin street, for the sum and price of ninety-five hundred dollars:
“Now, therefore, it is agreed that ten per cent. (10) of the purchase price, to wit, nine hundred and fifty dollars, shall this day be deposited in the People’s Savings, Trust & Banking Company, of this city, and the certificate of deposit of the said banking company, payable to the joint order of the said Widow Barbara Eeucht, and the said W. W. Girault shall be evidence that the said deposit has been made, the same .to be held in escrow until the titles are examined and the act of sale duly passed, when the said nine hundred and fifty dollars shall be paid over to the said Widow Barbara Eeucht as a part of the purchase price.
“In the event, however, that the title to the property should be rejected, the said nine hundred and fifty dollars shall be returned to W. W. Girault.”
Plaintiff alleges that defendant delivered to him her title papers at the time of the execution of this contract. He sets out the more full description of the property contained in these title papers.
He alleges that he made the deposit as required by the contract, and that after the title had been examined and pronounced good he notified defendant of his readiness to consummate the contract, and that defendant repeatedly promised to do so, but finally notified him in writing that she would not carry out the agreement.
The suit was dismissed on exception of no-cause of action. The first defense is based on the following clause of the contract:
“In the event, however, that the titles, to the property should be rejected, the said $950 shall be returned to W. W. Girault.”
This clause, it is said, put it in the power of plaintiff to recede from the contract at pleasure by simply rejecting the title; that it is a potestative condition; and that:
“Every obligation is null that has been contracted on a potestative condition on the part of him who binds himself.” Civ. Code, art. 2034.
Plaintiff replies that the potestative condition to which article 2034 has reference is the one “which makes the obligation depend solely on the exercise of the obligor’s will” (Civ. Code, art. 2035); and that in the instant case the event of' the rejection of the title was not to depend upon the will of the purchaser, but upon whether the title was found to be good, or the contrary. This appears to us to be the correct view. If the parties had intended that plaintiff should not be bound to carry out the agreement in the event the title proved to be good, they would hardly have taken the trouble to draw up and sign the written instrument.
Article 1950: “When there is 'anything doubtful in agreements, we must endeaver to ascertain what was the common intention of the parties, rather than adhere to the literal sense of the terms.”
Article 1951: “When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense that would render it nugatory.”
Article 2037, Civ. Code: “Every condition must be performed in the manner that it is *279 probable that the parties wished and intended that it should be.”
Manifestly, what the parties intended if the title was good was that plaintiff should be bound to talce the property. We are constantly having suits to compel purchasers to take property which they have refused to take on the grounds of the title, being bad. Such cases are so numerous that the citation of any of them is unnecessary.
The next defense is that the contract is null because the property is not so described as to be identified. In support of this the cases of Carmichael v. Aiken’s Heirs, 13 La. 210; Jacques v. Kopman, 6 La. Ann. 542; Syer v. Bundy, 9 La. Ann. 540; and Augusti v. Lawless’ Heirs, 45 La. Ann. 1370, 14 South. 228— are cited. Those were tax sales, and for obvious reasons analogy between them and private sales is wanting. As was said in Carmichael v. Aiken’s Heirs, the leading case, the object of the advertisement “is to bring the fact of the seizure to the knowledge of the absent owner,” and “to enable the bidders at the sale to know what they are buying.” It is not necessary to point out how inapplicable to a private sale these reasons are. In our case the parties knew perfectly well what property they were buying and selling, and the description they gave of it in the contract is ample for identification. It is the entire lots and all the improvements on them, bearing the numbers named, on Basin street, in the square described.
Moreover, descriptions in acts may often be supplemented as between the parties by evidence dehors the written acts, and on the trial of the merits plaintiff might perhaps be able to show that Nos. 500 to 506 Basin street are accurately described on certain public records, or that defendant owned no other property than this in the square in question.
Lastly, defendant contends that specific performance of such a contract cannot, or should not, be decreed. We do not see why not. Our Codes provide eximessly that the specific performance of contracts may be enforced.
“Art. 1926. On the breach of any obligation to do or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.
“Art. 1927. In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.”
The Code of Practice: “Art. 636. When the judgment orders, not the delivering, but the doing or refraining from something specified in it, if the party condemned, on demand made by the sheriff that he shall comply with it, refuses or neglects to do so, and this refusal or neglect appears by a certificate of the sheriff, the party in whose favor the judgment was rendered may obtain, on motion, an order to distrain all the property movable and immovable of the party who is in default, until he shall have fully satisfied the judgment.”
The effect of adopting defendant’s contention would be to wipe these articles out of our Codes, for, if not in such a case as the one at bar, in what case would specific performance of a contract ever be enforced.
According to article 1926 the obligee is “entitled” to damages or specific performance “at his option,” and according to article 1927 he is “entitled” only to damages in ordinary cases, “but may” be awarded specific performance in cases where damages would be inadequate relief. Reading these two articles together, that is to say, reading the word “may” in conjunction with the twice used word “entitled,” to which it stands in co-relation, the word “may” must be given, we think, the meaning of shall, and the articles must read that, where damages are inadequate relief, the court, not “may,” but “shall” or “must,” order specific performance. If the obligee is “entitled” to a thing, the court has no discretion about according it to him or not, but is obliged to do so. The sole question is, therefore, as to whether in *281 this case damages would be adequate relief.
Evidently, in our opinion it would not be. The plaintiff is entitled to have this particular piece of property, and the measure of his right is this property. The court cannot take upon itself to say that anything short of this property will satisfy his demand. Such a thing might be as that damages to the full market value of this property would be as nothing to him, as compared with having the property itself.
We find but one case in our reports where the court has had occasion to consider a suit by the promissee for specific performance of a promise of sale of immovable property, and that is the case of Long v. French, 13 La. 257, where specific performance was ordered.
In Citizens’ Bank v. James, 26 La. Ann. 264, the demand was that “the defendant be ordered to accept the sale of the property and to furnish his stock note” ; in other words, to become a stockholder of the Citizens’ Bank. The decision consists of a lengthy discussion of the merits of the case, with no discussion of the question of whether specific performance of contracts will be ordered or not. But the court adds at the end of the decision the foi’owing paragraph:
“The bank asks that the defendant should be compelled to comply with his contract. It is not in our power to force him to do so. The penalty be incurs for violating it is the damage he has occasioned.”
The court does not explain why it has not the power. Manifestly, however, the ease was not a proper one for specific performance, and defendant should not be compelled nolens volens to become stockholders of a bank.
City v. Railroad Co., 44 La. Ann. 64, 10 South. 401, involved a levee building contract. Rice v. Rice, 46 La. Ann. 712, 15 South. 538, was for a personal judgment on a moneyed demand.
Laroussini v. Werlein, 48 La. Ann. 13, 18 South 704, was by a lessor against a lessee, manifestly a demand resolving itself into a claim for money. A different decision might have been rendered had the suit been by a lessee against the lessor for possession of the leased premises.
In Mirandona v. Burg, 49 La. Ann. 656, 21 South. 723, the contract had special features which rendered the specific enforcement of it impossible, as the court well pointed out.
In Caperton v. Forrey, 49 La. Ann. 872, 21 South. 600, the specific performance was, in the words of the syllabus, “beyond the ability of the defendant.”
This exhausts the list of cases cited by-defendant. They do not touch the question we are concerned with, which is whether specific performance of a promise of sale of real estate will be enforced as against the vendor. To our mind, if by virtue of a promise of sale equivalent to a sale a man is practically the owner of a certain piece of real estate, and asks the court to enforce his rights, the court would be making but a poor response by giving him damages. What he wants, and has a clear and ineontestible right to, is the property itself. To award him mere damages and reject his demand for the property would not be to give him his right, but would be to deny him his right. In the instant case there was not only a promise of sale, but a sale partly executed by payment of a part of the price.
Differently from our Code the Code Napoleon provides (article 1142) that:
“Every obligation to do or not to do resolves itself into a claim for damages in case of in-execution on the part of the debtor.”
Commenting on this article, Baudry Lacantinerie et Barde, Obl. vol. 1, p. 515, has the following:
“On lit dans 1’art. 1142: ‘Toute obligation de faire ou de ne pas faire je résout en dommagesintérets, en cas d’inex icution he la part du débiteur.’ En d’autres termes, une obligation de faire ou de ne pas faire se transforme en dommages-intérets, qu-j.nd il y a impossibilité pour le créancier d’en obtenir l’exécution.
“II ne faut pas exagérer la portée de l’art. 1142; si l’on prenait a la lettre et isolément la disposition de cet article, on pourrait croire *283 qu’il ne donne au créancier que le droit de réolamer des dommages-intérets. II n’en est point ainsi. Méme pour les obligations de faire ou de ne pas faire, le créancier peut exiger l’exécution en nature. L’art 1142 ne renferme point une proposition absolue, ni mome une proposition générale. D’ailleurs, nous le ven'ons, sa portée est limitée par les dispositions des art. 1143 et 1144. De l’ensamble de ces textes et de l’historique de la question se dégage cette idéeque le créancier a droit en principe 3 l’exécution en nature. Au surplus, c’est 13 une conséquence de cette régle que la convention fait la loi des parties. Ainsi le créancier peut demander en justice l’exécution en nature, et, d’autre part, le débiteu doit offrir cette execution pour que ses oífres soient satisfactories.”
Our argument, thus far, has proceeded on the theory that the obligation sought to be enforced in this ease is an obligation to do. But such is not its nature. It is an obligation to deliver, and could not possibly resolve itself into an obligation to pay damages, unless where a man has a right to a cow the court could be at liberty to require him to sue for two calves, or two sheep, or the equivalent in hogs.
Article 2462, Oiv. Code, provides, as follows:
“A promise to sell amounts to a sale, when there exists a reciprocal consent of both parties, as to the thing and the price thereof; but, to have its effect, either between the contracting parties or with regard to other persons, the promise to sell must be vested with the same formalities, as are above prescribed in articles 2439 and 2440 concerning sales, in all cases where the law directs that the sale be committed to writing.”
The articles 2439 and 2440, here referred to, read, as follows:
“Art. 2439. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
“Three circumstances concur to the perfection of the contract, to wit: The thing sold, the price and the consent.
“Art. 2440. All sales of immovable property shall be made by authentic act or under private signature.
“Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons'as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.”
All the conditions here enumerated are met in the present contract — a thing, a price, a consent, and a contract reduced to writing. This contract, then, amounts to a sale.
The following, which we quote from Euzier-I-Iermnn (article 1589), expresses the view of the French courts and law writers upon the effect of the corresponding article of the Code Napoleon:
“La promisse de vente, valant vente, lorsqu’il ya consentment réeiproque des parties sur la chose et sur le prix, transfére la propriété de la chose vendue a l’ahheteur vis 3 vis du vendeur.”
To this is appended a long list of authors and decisions, nemine dissentiente.
Examination of these authorities shows that this conclusion results from the combined effect of the two codal provisions, viz., that the contract of sale is perfect as between the parties by mere consent, and that the parties may by their contract make a law for themselves in everything not contrary to public policy or good morals.
Our own decisions on the subject, in addition to those already referred to, are: McDonald v. Aubert, 17 La. 448; Thompson v. Mylne, 11 Rob. 349; Barrett v. His Creditors, 12 Rob. 474; Stephens v. Chamberlin, 5 La. Ann. 656; Peck v. Overton, 7 La. Ann. 70; Thompson v. Mylne, 6 La. Ann. 80; Peck v. Bemiss, 10 La. Ann. 160; Knox v. Payne, 13 La. Ann. 361; Garrett v. Crooks, 15 La. Ann. 483; Foreman v. Saxon, 30 La. Ann. 1117; Broadwell v. Sheriff, 34 La. Ann. 677; Thompson v. Sheriff, 40 La. Ann. 712, 5 South. 58; Collins v. Desmaret, 45 La. Ann. 108, 12 South. 121.
Whatever may be the result of these decisions, in so far as concerns the effect of a promise of sale in transferring the ownership, certain it is that they are absolute and conclusive on the question of whether the proper action on such a promise is for damages or for specific performance. Thus, in McDonald v. Aubert, 17 La. 450, the court said:
*285 “We understand article 2437 (2402) to mean that a promise to sell is so far a sale that it .gives to either party a right to claim, recta via, the delivery of the thing.
And in the leading case of Peck v. Bemiss, 10 La. Ann. 160, where the effect of article 2462 was elaborately considered, the court said:
“The antecedent history of the jurisprudence • of Prance, from whose Code we have taken this article, and which is luminously considered by Marcade, is a satisfactory key to the true meaning of the expression: ‘La promesse de vendre vaut vente.’ It seems to have been dictated by a desire to put at rest the question which had divided learned minds, whether a promise of :sale created such an obligation as entitled the promisee to an action for specific performance, or simply7 an action for damages. It is in this ■sense the Code speaks, as we think that author has justly remarked: ‘La promesse de vendre vaut vente, c’est a tire, oblige a passer le contra.’ ”
And in Collins v. Desmaret, 45 La. Ann. 108, 114, 12 South. 121, the court, speaking •of the promise of sale, said:
“It produces only such an obligation as may be specifically enforced, but does not absolutely convey the property, or confer upon the promis- •or the rights., of vendor.”
Pending the suit defendant died, and her executor has been made a party in her place.
Judgment set aside, exception overruled, .and case remanded for trial on the merits.