HAWTHORNE, Justice.
Plaintiffs, Mrs. Susan Huber and Thomas L. Huber, Jr., instituted this suit seeking primarily to have cancelled and annulled for failure of consideration a lease made by them to the defendant Ed Taussig covering certain real and personal property, and to recover damages as a result of defendant’s breach of the lease contract. Their suit was dismissed on an exception of no right or cause of action, and they have appealed.
The facts pertinent for the purposes of this decision, as disclosed by plaintiffs’ petition and the annexed documents, are these:
On June 5, 1946, plaintiffs leased to the defendant property in Lake Charles on which defendant was to conduct an automobile dealership, garage, and filling station. This lease, which was in writing, was for a period of six years beginning November 1, 1946, and provided for a rental of $1,400 per month for the first five years and $800 per month for the remaining period of its term. It also contained a provision for a renewal option for an additional four-year period.
Before the execution of this lease contract, the plaintiffs, doing business under the trade name, and as owners, of Quality Oil Company, had entered into a contract with Pan-American Petroleum Corporation for the sale and distribution of the petroleum products of that corporation. On June 25, 1946 (after the lease was executed but before the defendant had taken possession of the leased premises), plaintiffs and defendant entered into a written agreement, a copy of which is attached to the petition. In this instrument it was expressly stipulated that, as part of the consideration for the execution of the lease, the defendant agreed to purchase during the term of the lease exclusively from plaintiffs (Quality Oil Company) gasoline, oil, and other petroleum products to be sold in the filling station operated by him on the leased premises, and this exclusive purchase agreement, among other things, fixed the minimum and maximum quantities of the various petroleum products to be purchased and the prices to be paid for them. In Paragraph 9 of this exclusive purchase contract it was stated:
“It is recognized that the Quality Oil Company has a jobber’s contract with the Pan-Am Petroleum Company and that should the Pan-Am Petroleum Company cancel the contract with the Quality Oil Company and the Quality Oil Company does not secure a jobber’s contract from some major oil company satisfactory to Taussig, in order to carry out the terms of this exclusive sales agreement, then the *458 agreement shall terminate at such time, at the option of Taussig.”
On September 20, 1950, the Pan-American Petroleum Corporation notified the plaintiffs that on the expiration date of its distributorship contract, October 31, 1950, this contract would be cancelled and would not be renewed. Plaintiffs immediately thereafter entered into a distributorship contract with Skelly Oil Company for the purchase, sale, and distribution of its petroleum products in Lake Charles, Louisiana, so that they might continue the supplying of petroleum products to defendant as contemplated in the exclusive purchase agreement of June 25, 1946. Accordingly on October 18, 1950, the plaintiffs notified the defendant by letter that they had entered into a jobber’s contract with Skelly Oil Company effective November 1, 1950, and that they were able to furnish to him the petroleum products of that oil company, all as provided and contemplated by the terms and conditions of the exclusive purchase agreement. On October 21 the defendant advised the plaintiffs that he likewise had received notification from Pan-American of the termination of the plaintiffs’ jobber’s agreement with that concern, and that this corporation had requested the defendant to continue to sell its products. Since November 1, 1950, the defendant has refused to accept the petroleum products offered by plaintiffs and has purchased from others the petroleum products necessary for the conduct of the business on the leased premises. During the three-year period in which the terms of the exclusive purchase agreement were complied with, the plaintiffs from the sale to the defendant of petroleum products thereunder made a net average profit of approximately $830 per month.
It is defendant’s contention that the exclusive purchase agreement entered into with the plaintiffs contained an optional condition (Paragraph 9, quoted above) which granted him the right of terminating the purchase agreement on the termination by Pan-American of its jobber’s contract with the plaintiffs, and that the exercise of this option by him did not in any way affect the commercial lease which the plaintiffs seek to cancel in this action.
Plaintiffs allege in their petition that the exclusive purchase agreement was a serious and substantial consideration for the execution of the lease, and that the lease agreement would not have been entered into for the cash rental therein stipulated in the absence of the benefits to be derived under the exclusive purchase agreement, and that the defendant’s breach of the purchase agreement was illegal, unwarranted, and arbitrary. It is the contention of the plaintiffs that the action of the defendant in terminating the exclusive purchase agreement resulted in a failure of consideration of the lease contract and was a violation and breach of this contract.
It is our opinion that under these allegations a breach of the exclusive purchase agreement by the lessee, the defendant, would entitle the lessors, the plaintiffs, to *460 cancel or terminate the contract of lease. The trial judge so held, and we think correctly. However, he concluded in sustaining the exception of no cause or right of action that the acts alleged in plaintiffs’ petition to have been committed by the defendant were not a violation or breach of the exclusive purchase agreement which would entitle plaintiffs to terminate the contract of lease. With this conclusion we do not agree. •
Plaintiffs allege that the refusal of the defendant to accept and purchase the products of Skelly Oil Company in lieu of the petroleum products of Pan-American was unwarranted, arbitrary, and without justification. Defendant on the other hand relies on Paragraph 9 of the purchase agreement as authorizing his rejection of the products offered by plaintiffs. The provisions of Paragraph 9, as argued by plaintiffs, were meant to protect both parties under a continuing arrangement, and meant that every effort would be made in good faith to agree upon a substitute should Pan-American terminate its contract with the plaintiffs. As pointed out by them, the clause itself stated that the purpose for the provision for a substitute was “to carry out the terms of this exclusive sales agreement”. Under the provisions of this clause we do not think the parties intended that the defendant would have the option of arbitrarily refusing any company offered by merely stating that such company was unsatisfactory, and we think that he, the defendant, was under a duty of executing his obligation in good faith and according to an objective standard, and consequently, when the products of Skelly Oil Company were offered to him in lieu of those of Pan-American, his refusal had to depend upon a bona fide exercise of judgment and not on his mere pleasure or caprice. Girault v. Feucht, 117 La. 276, 41 So. 572; Whited & Wheless v. Calhoun, 122 La. 100, 47 So. 415; Salles v. Stafford, Derbes & Roy, Inc., 173 La. 361, 137 So. 62; Sporl v. New York Indemnity Co., 176 La. 363, 145 So. 771; Steppach v. S. E. Worms & Co., 7 Orleans App. 214. Plaintiffs’ allegation that the refusal of defendant to accept the products of Skelly Oil Company was arbitrary and without justification in our opinion states a cause of action.
Defendant may have a good and valid reason for considering the products of Skelly Oil Company unsatisfactory, and he may be fully justified in his refusal to accept these products for sale. If so, his refusal to accept these products would not constitute a breach of the purchase agreement which would entitle plaintiffs to a cancellation of the lease contract. This is a question of fact, however, which will have to be determined on the trial of this case on its merits.
For the reasons assigned, the judgment appealed from is reversed, and the case is remanded to the district court for further proceedings. The defendant-appellee is to pay the costs of this appeal; all other costs are to await the final disposition of the case on its merits.