SIMON, Justice.
Plaintiffs, Mrs. Susan Huber, Thomas L. Huber, Jr., and Quality Oil Co., Inc., instituted this suit against Ed Taussig and Ed Taussig, Inc., seeking primarily a judgment cancelling and terminating a contract of commercial lease dated June 5, 1946, and to recover damages in favor of Quality Oil Co., Inc., (hereinafter referred to as Qual *1021 ity) resulting from an alleged breach of said lease in the sum of $830 per month beginning November 1, 1950, and ending on the date of final judgment cancelling said lease. In the alternative, should said lease not be cancelled, plaintiffs seek judgment condemning defendant to pay to Quality the sum of $830 per month beginning November 1, 1950 and ending on the date of the final termination of said lease in accordance with its terms and provisions.
Exceptions of no right and no cause of action were filed. Judgment was rendered maintaining said exception and dismissing the suit, for the written reason assigned by the trial judge that “under the provisions of Paragraph 9 of the exclusive purchase agreement Taussig could arbitrarily refuse to accept any other petroleum products from Quality Oil Company in the event its jobber’s contract with Pan-American Petroleum Corporation should be cancelled”.
Plaintiffs appealed from said judgment, and in a reversal thereof we said: that defendants did not have the right to arbitrarily refuse to accept another product but that such refusal must depend upon a bona fide exercise of judgment and not on defendant’s mere pleasure or caprice.[1]
We further said:
“Defendant may have a good and valid reason for considering the products of Skelly Oil Company unsatisfactory, and he may be fully justified in his refusal to accept these products for sale. If so, his refusal to accept these products would not constitute a breach of the purchase agreement which would entitle plaintiffs to a cancellation of the lease contract. This is a question of fact, however, which will have to be determined on the trial of this case on its merits.”
Accordingly, we remanded the matter to the district court for further proceedings consistent with the views expressed by us.
At a pretrial conference the trial court ruled that plaintiffs would not be permitted to introduce evidence of legal fraud but would be confined to proof warranting the cancellation of the contracts, of their dependency one on the other, of their alleged breach, and of alleged damages resulting from said breach.
The chronological events culminating in this suit are as follows:
On June 5, 1946, Mrs. Susan Huber and Thomas L. Huber, Jr., leased to Ed Taussig property located in Lake Charles, for the purpose of operating an automobile dealership and repair and service station, for a period of six years, beginning November 1, 1946, at a monthly rental of $1,400 for the first five years and $800 per month for the remaining period. It also contained a renewal option for an additional four-year period at a monthly rental of $800. It is also observed that from the year 1926 to 1941 plaintiffs, as owners, used said prop *1023 erty to conduct the business of selling and servicing cars under an exclusive Ford franchise. In 1941 defendant acquired the Ford Company franchise from plaintiffs and leased said property from the Lake Charles Investment Company, Inc., then owned by plaintiffs, at which time defendant had also signed an agreement with Quality, owned by plaintiffs, to buy gasoline, motor oils and related products distributed by Quality under an exclusive sales franchise with Pan-American Petroleum Company (hereinafter referred to as Pan-Am).
On June 25, 1946, defendant entered into an “exclusive purchase agreement” with Quality as part of the consideration for the lease execution by them on June 5, 1946, to purchase exclusively from Quality all gasoline, oil and other petroleum products retailed on the leased premises. Paragraph 9 of this “exclusive purchase agreement” provides:
“It is recognized that the Quality Oil Company has a jobber’s contract with the Pan-Am Petroleum Company and that should the Pan-Am Petroleum Company cancel the contract with the Quality Oil Company and the Quality Oil Company does not secure a jobber’s contract from some major oil company satisfactory to Taussig, in order to carry out the terms of this exclusive sales agreement, then the agreement shall terminate at such time, at the option of Taussig.”
Subsequently the legal status of the parties changed both incorporating their respective businesses, which, however, did ■not affect the lease and purchase agreements heretofore entered into by them.
It appears that though Quality enjoyed an exclusive franchise from Pan-Am for many years prior to the execution of the contracts herein involved, their business relationship lacked harmony, being threatened by personality clashes between T. L. Huber, Jr., and the officials of Pan-Am to such an extent that in 1946 T. L. Huber, Jr., ceased active participation in the affairs of Quality to avoid cancellation by Pan-Am of that exclusive franchise. Albeit, in the summer of 1950, T. L. Huber, Jr., decided to resume active participation in Quality; and, anticipating that his re-entry would incur repercussions on the part of Pan-Am, he proceeded to obtain a franchise or jobber’s agreement with some other oil company which would be satisfactory to Taussig. It is undisputed that Huber, Jr., contacted Cities Service Company, Magnolia Petroleum Company, Texas Company and Continental Oil Company. Apparently none of these oil companies agreed to grant to Quality, acting through Huber, Jr., an exclusive sales franchise. The record further discloses that Taussig was acutely aware of the dissention between Pan-Am and Huber, Jr. His apprehension of the ever-present threat of cancellation by Pan-Am of its exclusive franchise to Quality unquestionably accounts for the inclusion of the conditional option clause con *1025 tained in paragraph 9 of the purchase agreement of June 25, 1946.
It is significant that a few months prior to the cancellation of Pan-Am’s exclusive franchise, Huber, Jr., undoubtedly anticipating the loss of this franchise, inquired of Taussig whether Cities Service oil products would be satisfactory. Taussig then advised Huber that in view of the extensive operation and large refinery of Cities Service in the Lake Charles area, the number of its employees residing therein, and the fact that the quality of its products was well known and generally accepted, this major oil company would be acceptable and satisfactory to him.
On September 20, 1950, Pan-Am notified Quality by letter that its exclusive franchise was cancelled effective October 31, 1950. On the next day, September 21, 1950, Quality, acting through Huber, Jr., consummated a written contract to sell exclusively the products of Skelly Oil Company in the Lake Charles area effective November 1, 1950.
The record discloses that during October, 1950, Huber, Jr., and Mr. Fritts, a representative of Skelly Oil Company, called on Taussig to inform him that effective November 1, 1950, Quality would deliver Skelly Oil products instead of Pan-Am products. Taussig, having prior knowledge of Quality’s contract with Skelly Oil and having made a full investigation of the status of Skelly Oil Company, informed Fritts and Huber, Jr., that his investigation disclosed that Skelly Oil Company had no oil operations and no retail outlets in the area, could give no reciprocal business, and was as a stranger to the retail oil business in the Lake Charles area; and that he could not accept Slcelly’s products as a substitute for the well-known and publicly accepted Pan-Am products. Fritts, in effect confirming the results of Taussig’s investigation, readily admitted that Skelly Oil had never had any operations in this area; that it did not contemplate any type of production or refining operation in this vicinity, and that it had not conducted any promotional sales or advertising program in the Lake Charles area.
Shortly thereafter, by letter dated October 18, 1950, Quality formally notified Taussig of its jobber’s contract with Skelly Oil Company, effective November 1, 1950, notwithstanding Taussig’s oral refusal as above outlined. Nonetheless, on October 21, 1950, Taussig wrote Quality notifying it that he would continue selling Pan-Am products and reiterated his reasons for rejecting Skelly Oil products; that he would exercise the option granted him under paragraph 9 of the purchase agreement and thus terminate it effective October 31, 1950.
After a trial on the merits, the district' court rendered judgment in favor of plaintiffs, cancelling and terminating the contract of lease, restoring to plaintiffs the possession of said leased premises, together with all property included in or covered therein. Judgment was further rendered *1027 dismissing the respective demands of plaintiffs and defendants, without prejudice.
Thus, under the facts and circumstances herein presented, the crux of this appeal is whether defendants were legally justified, under the provisions of paragraph 9 of the purchase agreement, in refusing to accept the Skelly Oil Company petroleum products offered by Quality, effective November 1, 1950.
Obviously by paragraph 9 of the purchase agreement the parties intended mutual protection under the continuing arrangement and that every effort would be made in good faith to agree upon a substitute should the existing operative franchise be cancelled. When this matter was originally before us we observed that “the clause itself stated that the purpose for the provision for a substitute was ‘to carry out the terms of this exclusive sales agreement’ It did not intend to afford the defendant the option of arbitrarily refusing any substitute by merely declaring dissatisfaction. We held that the defendant was under a duty of executing his obligation in good faith and according to an objective standard and that his refusal to accept the products of Skelly Oil Company in lieu of the products of Pan-Am had to depend upon a bona fide exercise of judgment and not upon mere pleasure or caprice. We further recognized the fact that defendant may have had a good and valid reason for considering Skelly Oil Company products unsatisfactory to him, and thus be fully justified in his rejection of said company. Such a refusal would not constitute a breach of the purchase agreement which would entitle plaintiffs to a cancellation of the lease contract.
Generally, what shall constitute compliance with a contract wherein the subject matter thereof shall be satisfactory to one of the parties presents two distinct but inter-related questions — one, whether the party upon whom is placed the obligation of accepting acts in good faith, and the other whether he acts reasonably. A mere declaration of one’s dissatisfaction is not in itself conclusive. He has the right to fairly and candidly investigate and consider the matter and reach a genuine conclusion. His action must not be arbitrary or capricious. In exercising this right it follows that the correctness of his decision and the adequacy of the grounds therefor are subject to judicial determination.
It appears that the Skelly Oil Company, in comparison with other oil companies of the United States, is a “major” oil company. Nevertheless the record clearly establishes that prior to October 31, 1950 the products of Skelly Oil Company were unknown to the general trade in the Lake Charles area, the area pointedly affected by the contract; that there were no retail outlets for Skelly products in the Lake Charles area which could have afforded Taussig the opportunity to review and judge the measure of the public’s reception of the Skelly petroleum products; that no adver *1029 rising program or promotional sales program had been undertaken or was even contemplated by Skelly in that area. These factors had to be marshalled, analyzed and weighed by Taussig during the short period immediately prior to October 31, 1950, without benefit of opportunity to test their merits under subsequent light and circumstances. His decision as to his satisfaction was of necessity based on the then available and prevailing facts and no other. Under the dictates of business experience, as aforesaid, Taussig conducted a personal investigation of the factors above detailed in an effort to determine the desirability of handling Skelly Oil products. The adverse results of his investigation, the correctness of which was in turn conceded by Huber and Fritts, predicated his decision and served as the basis of his expressed dissatisfaction and rejection of Skelly Oil products as a substitute for the Pan-Am products.
The record reveals that since November 1, 1950, as many as 12 service stations are successfully handling Skelly petroleum products exclusively. However,- the present-day reputation of Skelly Oil Company in regard to sales and distribution of its products and the activities engaged in by it in that area after November 1, 1950, are clearly immaterial and irrelevant. They can have no bearing on the decision which had to be made by Taussig on or before October 31, 1950, he being called upon to rely only on the then known and prevailing factors.
We feel that the rejection by Taussig of Skelly Oil products offered him by plaintiffs was not arbitrary, unreasonable, or without good and valid reasons. Hence, his conduct, being legally justifiable, does not constitute a breach of the purchase agreement which would authorize the cancellation of the lease contract.
In matters involving purely issues of fact, we recognize that the judgment of a lower court should be affirmed unless there be manifest error in the analysis of the facts and the conclusions drawn therefrom. The learned trial judge in his written reasons for judgment has ably analyzed the facts from a voluminous record, which analysis has been of material aid to us. We are constrained, however, to hold that the conclusions reached by him are at variance with and are not warranted by the facts.
Accordingly, for the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court be, and the same is hereby reversed, annulled and set aside and that there be judgment dismissing plaintiff’s suit at their cost.

. Huber v. Taussig, 224 La. 453, 69 So.2d 919, 921.