SAMUEL, Judge.
Plaintiff filed this suit for personal injuries resulting from a two-car collision which occurred at an intersection in the Parish of Jefferson. Named defendants were State Farm Mutual Insurance Company, liability insurer of plaintiff’s husband (the owner and driver of the automobile in which she was a passenger) and the owner, driver and liability insurer of the other vehicle involved in the accident.
Following trial on the merits, there was judgment in favor of plaintiff and against State Farm in the sum of $2,500 for general damages. The demands against all other defendants were dismissed. Plaintiff has appealed, contending the general damage award is inadequate. That contended inadequacy is the only issue before us.
The accident occurred on August 6, 1973. The vehicle in which plaintiff was a passenger was struck on the side where she was seated, throwing her under the dashboard. She was taken by ambulance to the emergency room of Ochsner Foundation Hospital with cuts and bruises on her arms and legs and complaints of pain in every area of her back. She remained in the emergency room for several hours before being discharged.
Plaintiff weighs about 300 pounds and always has had a problem with her back. In January, 1973, seven months before the accident in suit, plaintiff had undergone a complete physical at Ochsner and had been or was then under the care of Dr. Fitzgerald on the Ochsner staff. Dr. Fitzgerald was not called to testify and apparently did not treat plaintiff for injuries sustained in this accident.)
On October 10, 1973, for the first time after the emergency treatment which followed the accident, plaintiff sought treatment for her back from Dr. Gerald Davis, an orthopedic surgeon on the Ochsner staff. He started her on a program of physical therapy flexion exercises. He saw her on only one other occasion, October 24,1973, at which time she complained of no improvement and told him of a weight reduction diet recommended by Dr. Fitzgerald. Dr. Davis advised her to continue the exercises and diet and return in six weeks. He diagnosed her injuries as low back sprain. She did not return to see Dr. Davis.
On September 16, 1974 (approximately eleven months after her last visit to Dr. Davis) she was examined by Dr. Raeburn Llewellyn a neurosurgeon, complaining of back pain and leg discomfort. In relating *413 the history of her back problem, she informed the doctor of the accident of August 6,1973, relating all of her subsequent problems to that accident. The doctor was not informed of her prior complete physical or the prior x-rays which revealed a narrowing of the lumbosacral interspace with anterior spurring at L-4-5 levels in January, 1973.
Dr. Llewellyn recommended a myelogram and hospitalized plaintiff on September 20, 1974. X-rays at that time were negative except for a narrowing of the lumbar disc L-5 which was satisfactory from a diagnostic standpoint. However, the myelogram suggested presence of the L-5 disc bulging and an operation was performed which consisted of boring the two lowermost inter-spaces of plaintiff’s back. The operation revealed an old healed and no longer symptomatic disc at L-5, S-l interspace and a newer disc prablem at L-4, L-5 interspace which was symptomatic. The doctor concluded plaintiff experienced maximum response from the operation which repaired the L-&, L-5 disc but doubted she would ever be able to be completely active in her home and with a full outside schedule. He was of the opinion that, based upon his acceptance of plaintiff’s history from the date of the accident, as given to him by plaintiff, and no subsequent injuries, the accident of August 6, could have been the cause of here newer disc problem at L-4, L-5.
Upon cross examination the doctor testified he had no knowledge of plaintiff’s treatment at Ochsner, of any prior hospitalization, or of her checkup with x-rays taken on that occasion, seven months before the accident. He acknowledged a proper and correct history was essential to a determination of the cause of the newer disc problem at L-4, L-5. Plaintiff did not return to Dr. Llewellyn after the April, 1975 visit, although she was still complaining of continued back problems at the time of trial, January 16, 1976.
The basic question presented for our determination by this appeal is whether plaintiff has carried her burden of proving her newer and symptomatic disc problem at L-4, L-5 interspace was caused by the accident in suit. If she has carried that burden, she is entitled to an increase in the amount awarded her. If she did not carry that burden, we cannot increase the award in the absence of a finding of manifest error. Here, the answer to that question is largely dependent upon credibility, particularly the credibility of the plaintiff herself because Dr. Llewellyn’s opinion as to the cause of the injury being discussed was based on the incorrect or incomplete history given to him by the plaintiff.
In its Reasons for Judgment the trial court stated he was concerned with inconsistencies in plaintiff’s testimony[1] and the fact that she was stiff and guarded in movements involving her back when she felt she was being observed, but was quite mobile in unguarded moments.[2] In considering Dr. Llewellyn’s testimony the judge concluded it was based upon inaccurate and incomplete histories and suggested information given to that doctor by the plaintiff. Thus, the court concluded plaintiff had not maintained the necessary burden of proof concerning the connexity of the accident to the disc operation.
Where the trial judge has seen, heard and observed witnesses and the many other things which transpire in a courtroom and which are not susceptible of being taken down and transcribed by the reporter, his conclusions on question of fact will not be disturbed unless manifestly erroneous.[3] *414 Thus, the findings of fact of the trial judge involving credibility of witnesses are entitled to great weight.[4]
Further we note that in cases involving circumstances such as one presented here, the court must proceed to evaluate the testimony of all of the witnesses both lay and medical and, after making such an evaluation, may accept or reject the opinion expressed by any medical expert. In short, the trial judge is obliged to evaluate the testimony of a medical expert according to the same rules applicable to any other witness.[5]
In Canter v. Koehrlng Company,[6] the Supreme Court emphasized the broad discretion given to the trier of fact, especially in areas of credibility of witnesses. Here the trial judge simply did not believe the pertinent portions of plaintiff’s testimony. Accordingly, he was of the opinion the evidence failed to establish that the bulging disc problem of which she now complains was related to this accident. There is nothing in the record indicating he committed manifest error in arriving at this conclusion.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. At one point she testified her salary was $200 per week, whereas later testimony established it was $100 and raised to $200 at a time she had claimed she was not working at all.

. The trial judge particularly commented that on one occasion just before leaving the courtroom she leaned over and loosened her husband’s pants from his boot in spite of her claims of pain and stiffness on bending up to and including the time of trial.

.Olivier v. Abunza, 226 La. 456, 76 So.2d 528; Orlando v. Polito, 228 La. 846, 84 So.2d 433.

. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707; Talton v. Todd, 233 La. 146, 96 So.2d 327; Huber v. Ed. Taussig, Inc., 228 La. 1018, 84 So.2d 806; Bertrand v. Aetna Casualty & Surety Company, La.App., 306 So.2d 343.

. Jennings v. Halliburton Co., La.App., 346 So.2d 268; Matirne v. Wilson, La.App., 336 So.2d 960; Touchet v. Fidelity & Casualty Co. of New York, La.App., 264 So.2d 752; Frame v. Majors, La.App., 224 So.2d 65.

.La., 283 So.2d 716.